IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

ERIC SIM,                                          :
                                                   :
     Plaintiff,                                 :
                                                   :
v.                                                 :
                                                   :   Civil Action No. 4:26-cv-01563
CITY OF HOUSTON, *et al*.,                         :
                                                   :
     Defendants.                                :

**OPPOSITION TO DEFENDANTS CITY OF HOUSTON AND KATELYN HOWTON'S MOTION TO DISMISS THE COMPLAINT, SUBJECT TO PLAINTIFF'S MOTION FOR LEAVE TO EXCEED PAGE LIMIT**

Plaintiff Eric Sim, by and through counsel, states as follows for his Opposition to Defendants City of Houston (the "City") and Katelyn Howton's Motion to Dismiss the Complaint:

## I.   INTRODUCTION

Sim alleges the City and Howton violated his Fourth Amendment rights by subjecting him to false arrest and malicious prosecution. In the alternative, he asserts that Defendants engaged in Fourteenth Amendment substantive due process violations. Defendants' Motion to Dismiss misstates and misinterprets the well-pleaded allegations in the Complaint, ignores well-settled Fifth Circuit precedent, and relies on factually and procedurally inapposite caselaw. As detailed below, Defendants' Motion should be denied.

## II.   BACKGROUND

This Background assumes the truth of the Complaint's allegations, as required at the Rule 12(b)(6) stage. Sim engaged in consensual sexual relationships with Sooyoun Cho, Alejandra Espitia, Mia Morey, Thea Chavez, Kristina Azucena, and Nickole Ashlock, but has never had any type of sexual encounter with Xi Chen (collectively the "Complaining Witnesses"). Doc. No. 1 ("Compl.") at ¶¶ 34-158, 168-213, 330-31. Howton, an officer with the Houston Police

1

Department ("HPD"), interviewed the Complaining Witnesses while investigating claims of sexual assault against Sim. *Id*. at ¶¶ 229-363. During their interviews with Howton, the Complaining Witnesses made inconsistent, unbelievable, unsupported, and (in some cases) exonerating statements that would lead any reasonable police officer to conclude that there was no probable cause that they were sexually assaulted. *Id*. at ¶¶ 229-363, 464, 482. Despite this lack of probable cause, Howton prepared arrest warrant affidavits that contained misleading material omissions and false assertions that there was "good cause" to believe that Sim sexually assaulted the Complaining Witnesses. *Id*. at ¶¶ 229-289, 292-363. As a result of Howton's misconduct, Sim was falsely arrested and subjected to malicious criminal prosecutions. *Id*. at ¶¶ 290-91, 376, 391, 400. Howton also concealed and failed to disclose exculpatory evidence prior to Sim's arrest and during his criminal prosecution. *Id*. at ¶¶ 367, 382-83, 393, 395-96, 404-405, 408-410, 414, 419, 421, 434. All charges against Sim were eventually dropped prior to trial. *Id*. at ¶ 437.

Since at least 2016, the City *via* the HPD engaged in widespread practices related to the preparation of false probable cause affidavits effecting illegal arrests by officers in the HPD that were so common and well-settled as to constitute a custom that fairly represents municipal policy. *Id*. at ¶¶ 438-58. This policy also included a failure to meaningfully review whether police officers were making required disclosures to prosecutors. *Id*. at ¶¶ 456-58. Sim was caught in the illegal dragnet of the unlawful customs of the City and the HPD. *Id*. at ¶¶ 453-54, 507, 527.

### III.   LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss is "viewed with disfavor and is rarely granted," *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citation omitted), because a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face," *In re Katrina Canal*

*Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Austin v. City of Pasadena*, 74 F.4th 312, 321 (5th Cir. 2023) (citation omitted).  In considering a motion to dismiss, courts  accept "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Katrina Canal*, 495 F.3d at 205 (citations omitted).

## IV.    ARGUMENT

### A. Sim Has Plausibly Alleged Constitutional Violations

#### 1.  Fourth Amendment False Arrest

A plaintiff successfully pleads a Fourth Amendment false arrest violation under the framework developed by the Supreme Court in *Franks v. Delaware*, 438 U.S. 154 (1978), when he "alleges facts that show (1) a defendant prepared or presented an application for a warrant, (2) which included a false statement that was made knowingly and intentionally, or with reckless disregard for the truth, or misleading material omissions that were recklessly, intentionally, or knowingly omitted, and (3) that the allegedly false statement is necessary to the finding of probable cause." *Miller v. Salvaggio*, No. SA-20-CV-00642-JKP, 2021 WL 3474006 at *4 (W.D. Tex. Aug. 6, 2021) (internal quotation marks and citations omitted).  Here, Sim alleges that Howton prepared and presented probable cause affidavits based on her interviews with Cho and Espitia in order to obtain an arrest warrant for Sim.  Compl. at ¶ 275.  Thus, Sim has pleaded the first element of a Fourth Amendment false arrest claim.

In each arrest warrant affidavit, Howton stated that there was "good reason to believe" Cho and Espitia's "sexual organ[s] [were] unlawfully caused to contact the sexual organ of Eric Sim without consent." *Id*. at ¶¶ 278, 286.  However, during their lengthy interviews with Howton, both

Cho and Espitia could not remember key details regarding their sexual encounters with Sim and otherwise provided inconsistent and implausible information that could not possibly establish that there was probable cause to arrest Sim. *Id*. at ¶¶ 276, 283, 287. Despite these glaring issues, which were conveniently left out of Howton's arrest warrant affidavits, Howton falsely asserted that there was probable cause to arrest Sim for sexual assault. *Id*. at ¶¶ 275, 277-78, 283, 285, 286-87, 289.

With regard to Cho, "Howton ignored the fact that Cho either could not remember or was equivocal regarding crucial details of her sexual encounter with Sim, most notably whether anything was inserted into her vagina during the course of the encounter." *Id*. at ¶ 283. The Complaint further details the contradictory and nonsensical statements made by Cho during her interview with Howton. *Id*. at ¶¶ 229-252. Of particular note, Cho informed Howton at the outset of the interview that her "memory already erased" the sexual encounter with Sim. *Id*. at ¶ 234. Later in the interview, Cho laughed and told Howton that she "removed [her] memory" of the encounter. *Id*. at ¶ 235. As a result, a large portion of the interview consisted of Howton narrating supposed "facts" regarding the encounter and Cho agreeing with Howton. *Id*. at ¶ 249. Even then, Cho couched her responses to Howton with equivocal phrases, could not remember the details of the encounter, and could not remember the date of the encounter. *Id*. at ¶¶ 236-38, 241. When Howton asked Cho if the encounter occurred in August 2021, Cho responded, "Yeah. Maybe" *Id*. at ¶ 242. However, after giving this uncertain response, Cho claimed that she only began speaking with Sim one year before the interview with Howton took place. *Id*. at ¶ 243. Since the interview was conducted on February 28, 2024, this would have meant that Cho first spoke with Sim in early 2023, meaning that it would have been impossible for any sexual encounter to have taken place in August 2021. *Id*. at ¶¶ 229, 243. Cho claimed that there was a Christmas tree in Sim's house the night the supposed assault took place, making Cho's statement that the incident occurred in August

4

absurd.  *Id*. at ₱ 244.  Cho also told Howton that she thought she could try to have a relationship with Sim after the alleged assault and admitted that she called Sim for help after finding that her car was broken into after the encounter.  *Id*. at ₱₱ 250-51.  At one point in the interview Cho definitively responded "No" when asked if Sim put anything in her vagina and admitted that she did not know what caused the purported pain and bleeding in her vagina.  *Id*. at ₱₱ 245-46.

The Complaint also details the inconsistent and unreasonable statements that Espitia made during her interview with Howton on February 22, 2024.  *Id*. at ₱₱ 253-74.  Espitia told Howton that she went to Sim's home on the night of the alleged assault in order to have sex with him.  *Id*. at ₱₱ 255-57.  She also told Howton that she drank so much wine that evening that she blacked out and did not remember anything happening in Sim's bedroom other than Sim giving her a gift.  *Id*. at ₱₱ 259-60.  Espitia also informed Howton that a conversation with her friend led her to believe that "maybe" Sim put something in her food or drink.  *Id*. at ₱ 264.  In fact, Espitia told Howton that her friend "started, like, putting the stuff in [her] mind," referring to the unfounded claim that Sim drugged her.  *Id*. at ₱ 265.  Espitia later asserted that she definitively determined that Sim had drugged her after she took ayahuasca, a powerful hallucinogenic drug.  *Id*. at ₱ 266.  Espitia also explicitly told Howton, "I don't remember what happened" and admitted that she did not remember "dates or things like that" when referring to the sexual encounter.  *Id*. at ₱₱ 267, 274.

Defendants' assertion that Howton "never swore to the truth of another witness's statement" misses the point.  Doc. No. 19 at 13.[1]  Howton knowingly, intentionally, and falsely stated that there was "good reason to believe" Cho and Espitia's "sexual organ[s] [were] unlawfully

---

[1] Similarly, Defendants' cherrypicked and editorialized version of the allegations in the Complaint cannot support Defendants' position.  Doc. No. 19 at 14-15.  Defendants' misstatement of the allegations in the Complaint should be disregarded by the Court.

caused to contact the sexual organ of Eric Sim without consent" when she ignored the above-referenced inconsistent and unbelievable information when preparing her arrest warrant affidavits regarding Cho and Espitia. Compl. at ¶¶ 277-78, 286. Howton also knowingly lied about the date upon which Sim's purported sexual assault of Cho occurred in her arrest warrant affidavit. *Id*. at ¶¶ 278-82. Indeed, Howton conducted the interviews of Cho and Espitia. *Id*. at ¶¶ 229, 253. As a result, she not only knew that her assertions that there was probable cause to arrest Sim were false, but she was also aware that she misleadingly, intentionally, and knowingly omitted material information showing a lack of probable cause in her arrest warrant affidavits. *Id*. at ¶¶ 229-289, 463-64. Defendants notably do not include Howton's arrest warrant affidavits regarding Cho and Espitia in their Exhibit 2.[2] This is almost certainly because inclusion of those affidavits would, on its own, defeat the instant Motion by showing that there were "misleading material omissions that were recklessly, intentionally, or knowingly omitted" by Howton. *Miller*, 2021 WL 3474006 at *4. Regardless, as detailed above, the Complaint alleges facts that the arrest warrant affidavits that Howton prepared regarding Cho and Espitia "included a false statement that was made knowingly and intentionally, or with reckless disregard for the truth, or misleading material omissions that were recklessly, intentionally, or knowingly omitted." *Id*. Thus, Sim has pleaded the second element of a Fourth Amendment false arrest claim.

Finally, Howton's false assertion that there was "good reason" to believe that Sim unlawfully contacted Cho and Espitia's sexual organs and her misleading material omissions of the contradictory and nonsensical statements made by Cho and Espitia showing a lack of probable

---

[2] Rather, it appears that Defendants have included the criminal charges prepared on March 1, 2024, which are signed by Shakita Blueford, who appears to have been an administrative assistant at Harris County District Attorney's Office at that time. Doc. 19-2 at 2, 4. Defendants' apparent lack of candor with the Court in deliberately withholding the arrest warrant affidavits related to Cho and Espitia is disturbing.

cause were clearly "necessary to the finding of probable cause" that Sim committed sexual assault. *See id.* at \*4 (explaining that police officer's allegedly false statement that plaintiff was carrying a firearm was necessary to a finding of probable cause). Thus, Sim has pleaded the third and final element of a Fourth Amendment false arrest claim.

### 2.  Fourth Amendment Malicious Prosecution

To assert a malicious prosecution claim, a plaintiff must allege "(1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages," as well as an unlawful Fourth Amendment seizure. *Reyes v. Greer*, 686 F.Supp.3d 524, 532 (W.D. Tx. 2023). All of these elements are alleged in the Complaint.

As detailed in the preceding subsection, Sim has alleged an unlawful Fourth Amendment seizure. Section IV.A.I., *supra*; *see also Reyes*, 686 F.Supp.3d at 533-34 (explaining that an invalid "warrant that results in an [unlawful] arrest suffices" to establish an unlawful seizure when analyzing a Fourth Amendment malicious prosecution claim). "An arrest can commence criminal proceedings, as can an indictment." *Reyes*, 686 F.Supp.3d at 534. Sim was arrested on February 29, 2024 and indicted on March 1, March 28, and June 4, 2024. Compl. at ¶¶ 291, 376, 391, 400. Thus, a criminal proceeding was commenced against Sim.

Regarding causation, this Court has stated:

an officer may be responsible for commencing a criminal proceeding against a plaintiff, where the officer made, influenced, or participated in the decision to prosecute. An officer's false testimony at a preliminary hearing may suffice to link him to the commencement of the proceeding. Yet an officer is also responsible for commencing a proceeding when they have lied to or misled the prosecutor, [or] failed to disclose exculpatory evidence to the prosecutor.

7

*Reyes*, 686 F.Supp.3d at 534.  The faulty arrest warrant affidavits detailed above are akin to providing false testimony at a preliminary hearing.  Regardless, Howton's conduct in preparing the arrest warrant affidavits, namely falsely asserting that there was probable cause that Sim committed sexual assault and omitting evidence showing a lack of probable cause, constituted lying and misleading the prosecutor who brought the charges against Sim.  Howton engaged in such misconduct not only in the arrest warrant affidavits she prepared related to Cho and Espitia, but also in those that she prepared related to Chavez, Morey, Azucena, Chen, and Ashlock.  Compl. at ¶¶ 229-289, 292-363.  Howton's misbehavior also constituted a failure to disclose exculpatory evidence.  Moreover, after Sim's electronic devices were seized at the time of his arrest by Howton on February 29, 2024, Howton had complete access to a treasure trove of exculpatory evidence in the form of communications, photos, and videos which proved that Sim's encounters with the Complaining Witnesses were consensual but failed to inform the District Attorney's Office about the existence of the exonerating evidence.  *Id*. at ¶¶ 367, 382-83, 393, 395-96, 404-405, 408-410, 414, 419, 421, 434.  Howton's failure to disclose exculpatory evidence happened both prior to Sim's initial arrest and during the prosecution of his criminal cases.  *Id*.  Based on the foregoing, the Complaint adequately alleges causation on Howton's part.

All pending criminal charges against Sim were dropped on February 25, 2025.  *Id*. at ¶ 437.  Thus, Sim "properly alleges that the proceedings against him were favorably terminated."  *Reyes*, 686 F.Supp.3d at 536.  As noted above, the Complaint alleges that there was no probable cause to arrest Sim or continue the criminal prosecution against him due to the inconsistent, unbelievable, unsupported, and (in some cases) exonerating statements made by the Complaining Witnesses, as well as the readily available exculpatory evidence that Howton ignored.  Section IV. A. 1, *supra*; Compl. at ¶¶ 229-289, 292-363, 367, 382-83, 393, 395-96, 404-405, 408-410, 414, 419, 421, 434.

Because no reasonable officer "would believe to a fair probability that a crime had been committed," Sim has alleged an absence of probable cause. *Reyes*, 686 F.Supp.3d at 536.

"[I]t is well established that malice can be inferred from the absence of probable cause." *Id.* at 539. Malice can also be inferred when a police officer deliberately conceals or fails to disclose exculpatory evidence. *Id*. As detailed above, Sim alleges that there was no probable cause and that Howton concealed and failed to disclose exculpatory evidence. Section IV. A. 1, *supra*; Compl. at ¶¶ 229-289, 292-363, 367, 382-83, 393, 395-96, 404-405, 408-410, 414, 419, 421, 434. Sim further alleges that Howton made statements during the criminal prosecution that were indicative of her malice, specifically that she was trying to keep Sim in jail and get him "locked away." *Id*. at ¶¶ 354, 389, 411, 484. Thus, Sim has adequately alleged malice by Howton. Sim was forced to resign from his job and suffered severe reputational harm and emotional distress as a result of the commencement and continuation of the criminal proceeding against him. *Id*. at ¶¶ 486. As a result, Sim has adequately pleaded damages. *Reyes*, 686 F.Supp.3d at 539 (explaining that "emotional distress satisfies" the damages element). Based on the foregoing, it is clear that Sim has alleged multiple violations of the Fourth Amendment.

### 3. Sim's Claims Are Not Barred By The Independent Intermediary Doctrine

Defendants' reliance on the independent intermediary doctrine is misplaced. Doc. No. 19 at 15-17. A police officer "may be liable for false arrest . . . if the plaintiff shows that the deliberations of [an] intermediary were in some way tainted by the actions of the defendant." *McLin v. Ard*, 866 F.3d 682, 689 (5th Cir. 2017) (internal quotation marks and citation omitted); *see also Reyes*, 686 F.Supp.3d at 535-36 (applying *McLin* to malicious prosecution claim). Mere allegations of taint "may be adequate to survive a motion to dismiss where the complaint alleges other facts supporting the inference." *McLin*, 666 F.3d at 690. Allegations that false and

misleading affidavits tainted future deliberations by intermediaries are sufficient to support the inference of taint at the motion to dismiss stage. *See id*. at 690-91 (holding defendants who prepared false and misleading affidavits that led to the issuance of arrest warrants were not insulated from liability because plaintiff alleged that the false and misleading affidavits tainted a judge's deliberations); *Reyes*, 535-56 (holding that "neither the magistrate judge's nor the grand jury's finding of probable cause severed the causal chain because their decisions were tainted" because plaintiff alleged that police officers prepared false and misleading arrest warrant affidavits).

As detailed extensively above, Sim alleges that Howton prepared arrest warrant affidavits for all of the Complaining Witnesses that falsely asserted there was probable cause that Sim committed sexual assault and which also contained misleading material omissions that would have proved a lack of probable cause. Section IV. A. 1, *supra*; Compl. at ¶¶ 229-289, 292-363.[3]  Sim further asserts that Howton concealed and failed to disclose exculpatory evidence both prior to Sim's indictments and throughout the life of his criminal prosecution. Compl. at ¶¶ 367, 382-83, 393, 395-96, 404-405, 408-410, 414, 419, 421, 434. At the motion to dismiss stage, these allegations are sufficient to overcome the independent intermediary doctrine. *McLin*, 666 F.3d at 690-91; *Reyes*, 686 F.Supp.3d at 535-56.

### 4. Fourteenth Amendment Substantive Due Process

The Fifth Circuit has recognized a substantive due process violation where police intentionally fabricate evidence and successfully procure false charges against an individual for a felony. *Cook v. City of Tyler*, 2025 WL 2465293 at *7 (E.D. Tx. 2025). However, such a claim is

[3] As the Complaint alleges Howton tainted all of the arrest warrants issued and charges brought by intermediaries against Sim, it is unclear why Defendants harp on the fact that Sim was wrongfully arrested for and charged with seven instances of sexual assault. Doc. No. 19 at 16-17.

available only where all other constitutional claims are unavailing. *Id*. Thus, Sim has pleaded his Fourteenth Amendment Substantive Due Process claims against the City and Howton in the alternative in the event the Court determines there are no viable Fourth Amendment claims.

**B. Sim Has Plausibly Alleged A Section 1983 Claim Against The City**

In order to assert a Section 1983 claim against the City, a plaintiff must "allege (1) that an official policymaker with actual or constructive knowledge of the constitutional violation acted on behalf of the municipality; (2) that the allegedly unconstitutional action constitutes a custom or policy; and (3) that there was a violation of constitutional rights whose moving force is the policy or custom." *Ettinoffe v. Sheikh*, No. 4:21-CV-02646, 2022 WL 5200084 at *3 (S.D. Tex. Oct. 4, 2022) (internal quotation marks and citations omitted). The allegations in the Complaint meet all three prongs of this test.[4]

**1. Sim Adequately Alleges That An Official Policymaker With Actual Or Constructive Knowledge Of The Constitutional Violations Acted On Behalf Of The Municipality**

To survive a motion to dismiss, "a plaintiff is not required to single out the specific policymaker in his complaint; instead, a plaintiff need only plead *facts* that show that the defendant or defendants acted pursuant to a specific official policy, which was promulgated or ratified by the legally authorized policymaker." *Groden v. City of Dallas, Texas*, 826 F.3d 280, 282 (5th Cir. 2016). Here, the Complaint alleges that the City *via* the HPD "engaged in widespread practices related to the preparation of false probable cause affidavits and effecting illegal arrests by officers in the [HPD] that were so common and well-settled as to constitute a custom that fairly represents municipal policy." Compl. at ⁋ 438. Sim further alleges that prior to his arrest, "the [HPD]'s

---

[4] Defendants incorrectly assert that "Sim must plead facts that show that the defendants acted pursuant to a specific official policy, which was promulgated or ratified by the legally authorized policymaker." Doc. No. 19 at 5. This faulty claim is based on a fundamental misunderstanding of the allegations in the Complaint.

Special Victims Division customarily approved felony sexual-assault warrant affidavits without meaningful supervisory review, including by ignoring inconsistencies, contradictory statements, and the lack of corroboration." *Id*. at ⁋ 455. Sim maintains that "the City [] vested [HPD] supervisors, including in the Special Victims Division, with final authority over warrant affidavits, investigation continuation, and disclosures to prosecutors, and those decisions functioned as municipal policy because they were not meaningfully reviewed by higher command." *Id*. at ⁋ 456. Sim further alleges that these constitutional infirmities were frequent, prevalent, and widely known such that the City had, at a minimum, constructive knowledge of their existence. *Id*. at ⁋⁋ 439-451. Indeed, "when a plaintiff seeks to show an official policy through a pattern or custom, they must show only [a]ctual or constructive knowledge of such custom on behalf of the policymaker." *Ettinoffe*, 2022 WL 5200084 at *4. Thus, the allegations in the Complaint "adequately allege an official policymaker to satisfy prong 1 of the *Monell* inquiry" at the motion to dismiss stage. *Id*.

### 2. Sim Adequately Alleges That The Unconstitutional Action Constitutes A Custom Or Policy

"To find a municipality liable for a policy based on a pattern, that pattern must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Id*. at *4 (internal quotation marks and citation omitted). "A plausible pattern requires similarity and specificity; [p]rior indications cannot simply be for any and all bad or unwise acts, but rather must point to the specific violation in question." *Id*. (internal quotation marks and citations omitted). Regarding numerosity, "Other than requiring more than one incident by non-policymakers, neither the Fifth Circuit nor the Supreme Court [has] set a specific number of incidents that is required for a plausible claim of municipal liability under a custom or practice."

12

*Id*. (internal quotation marks and citation omitted) (bracketed text in original).  Indeed, "courts do not apply a strict numerical threshold but instead look at the incidents in context." *Id*.

Sim asserts that in 2019 alone the HPD was involved in 1,656 criminal cases where judges and magistrates in Harris County determined there was no probable cause.  Compl. at ⁋ 440.  It is certainly reasonable to infer that these included sexual assault matters.  Sim further alleges that a report issued by the Independent Review Committee ("IRC") found that between 2016 and 2024 there were structural deficiencies in the HPD that resulted in outdated and inconsistent policies and practices within the HPD and a lack of effective management in how cases were handled.  *Id*. at ⁋⁋ 447-51.  The IRC was appointed by the Mayor of Houston in 2024 to "identify trends, patterns, and discrepancies in the handling and closing incident reports." *City of Houston Mayor's Office*, *Office of Communications*, *Mayor's Press Release*, March 13, 2024, available at https://www.houstontx.gov/moc/2024/independent-police-review-committee.html (last accessed May 22, 2026).  The IRC noted, *inter alia*, that "Investigative divisions have near complete autonomy to create protocols for case management and as a result policies and practices among divisions are inconsistent and outdated," "The department does not identify and use technology to support investigative divisions," and that, in particular, Special Victims Department investigators are "underprepared." *HPD Independent Review Committee*, *Suspended Incident Reports* at 52, Aug. 21, 2024, available at sl-code-review-committee-final-report.pdf (last accessed May 22, 2026); *see also* Compl. at ⁋⁋ 449-50 (detailing deficiencies identified in IRC report).  Thus, Defendants' misguided assertion that the IRC report did not investigate structural deficiencies concerning how cases were investigated is belied by the plain language of the report.  Doc. No. 19 at 10.  Defendants' attempt to dispute the nature of the IRC report is also improper at the motion to dismiss stage.  Doc. No. 19 at 9-10; Doc. No. 19 at 10, n.3.

The aforementioned deficiencies led to the HPD adopting a custom of issuing "felony sexual-assault warrant affidavits without meaningful supervisory review, including by ignoring inconsistencies, contradictory statements, and the lack of corroboration" and "a custom of inadequate training on handling contradictory complainant statements, preparing warrant affidavits without material omissions or mischaracterizations, and disclosing exculpatory digital evidence to prosecutors." Compl. at ¶¶ 455, 457.[5] Based on these allegations it is reasonable to infer that, between 2016 and 2024, the HPD prepared false probable cause affidavits in sexual assault matters that led to multiple false arrests and malicious prosecutions, including Sim's false arrest and malicious prosecution. Sim also provides two illustrative examples of the results of the City's custom of preparing false probable cause affidavits and effecting illegal arrests that occurred in February 2019 and September 2023. *Id*. at ¶¶ 441-46.[6] Defendants' attempt to limit Sim's allegations to the illustrative examples is improper in light of the additional allegations establishing municipal liability in the Complaint that Defendants conveniently ignore. Doc. No. 19 at 8-9.

"[C]ourts have been reluctant to dismiss cases in which plaintiffs alleged patterns with comparable degrees of similarity, specificity, and numerosity to the allegations in the" Complaint. *Ettinoffe*, 2022 WL 5200084 at *5; *see also Reyes v. City of Austin, Inc.*, No. 1:21-CV-00992-LY-SH, 2022 WL 789333, at *4 (W.D. Tex. Mar. 15, 2022) (allegations of "about 10 [or] so" arrests

---

[5] Defendants' assertion that the Complaint "does not identify any specific training or supervision failure" is false in light of these allegations. Doc. No. 19 at 10. Further, when the Complaint is read resolving all reasonable inferences in Sim's favor, failures in training and supervision were present in the HPD from at least 2016 to 2024 and caused many false arrests and malicious prosecutions, including Sim's false arrest and malicious prosecution. Compl. at ¶¶ 438-58.

[6] After the filing of the Complaint, Sim subsequently became aware of another recent case where an individual was unconstitutionally subjected to a false arrest for sexual assault based on a fabricated probable cause affidavit following an investigation spearheaded by the individual police officers named in this action. In the event that he is required to amend his Complaint, Sim will include these newly discovered allegations in such a pleading.

of individuals who filmed police activity sufficiently pleaded a practice or custom); *Sanchez v. Gomez*, 283 F. Supp. 3d 524, 535-36 (W.D. Tex. 2017) (complaint that "describe[d] nine specific instances of EPPD officers using excessive force against mentally ill victims" survived motion to dismiss); *Hankins v. Cmty. Educ. Centers, Inc.*, No. 5:14CV43, 2015 WL 5522008 at *12 (E.D. Tex. Sept. 17, 2015) (denying motion to dismiss *Monell* claim where plaintiff alleged four previous instances of inmates who were denied or delayed medical care); *Myart v. City of San Antonio*, No. SA-06-CA-0256 FB(NN), 2007 WL 26805 at *2 (W.D. Tex. Jan. 3, 2007) (specifically identifying the allegedly unlawful policy was sufficient to survive motion to dismiss); *Barr v. City of San Antonio*, No. CIVASA-06-CA-0261-XR, 2006 WL 2322861 at *4 (W.D. Tex. July 25, 2006) (denying motion to dismiss where plaintiff alleged, without further detail, that city had been named a defendant in four similar lawsuits). As detailed above, when drawing all reasonable inferences in Sim's favor, the allegations in the Complaint assert that the City had an unconstitutional custom or policy of utilizing false probable cause affidavits to secure illegal arrests and malicious prosecutions in sexual assault cases.  Compl. at ¶¶ 438-58.

Moreover, "the Court cannot ignore 'that the procedural posture of this case is distinguishable from much of the case law on establishing a pattern.'" *Ettinoffe*, 2022 WL 5200084 at *5 (quoting *Oporto v. City of El Paso*, No. EP-10-CV-110, 2010 WL 3503457 at *6 (W.D. Tex. Sept. 2, 2010)).  "Discovery has not occurred in this case, whereas many decisions on this subject concern post-discovery motions." *Oporto*, 2010 WL 3503457 at *6.  In *Ettinoffe*, this Court denied the City's Motion to Dismiss a *Monell* claim, noting that the "precedential cases on which the City relies all occurred at the summary-judgment stage—in other words, only *after* discovery had occurred." *Ettinoffe*, 2022 WL 5200084 at *5 (emphasis in original).  Shockingly, in the instant matter, the City continues to incorrectly rely upon the very same cases that this Court deemed

inapposite at the motion to dismiss stage in 2022. Doc. No. 19 at 4-5, 8-9 (inappropriately citing *Davidson v. City of Stafford, Texas*, 848 F.3d 384 (5th Cir. 2017), *Hicks-Fields v. Harris Cnty., Texas*, 860 F.3d 803 (5th Cir. 2017), *Carnaby v. City of Houston*, 636 F.3d 183 (5th Cir. 2011), *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838 (5th Cir. 2009), and *Pineda v. City of Houston*, 291 F.3d 325 (5th Cir. 2002), in support of the instant Motion); *see also Ettinoffe*, 2022 WL 5200084 at *5-*6 (explaining that *Davidson*, *Hicks-Fields*, *Carnaby*, *Peterson*, and *Pineda* are irrelevant in determining whether a plaintiff has adequately pleaded a practice and custom sufficient to survive a motion to dismiss). Several other cases relied upon by Defendants were also decided at the summary judgment stage (or later) and are, therefore, irrelevant to this Court's determination of the instant Motion to Dismiss. *See Webb v. Town of Saint Joseph*, 925 F.3d 209, 215-20 (5th Cir. 2019); *Fuentes v. Nueces Cnty., Texas*, 689 F. App'x 775, 777-79 (5th Cir. 2017); *Winston v. City of Shreveport*, 390 F. App'x 379, 385 (5th Cir. 2010); *Brumfield v. Hollins*, 551 F.3d 322, 327-31 (5th Cir. 2008); *Tuttle v. City of Houston*, S.D. Tex. Case No. 4:21-cv-00270, Doc. No. 438-1 (Mar. 31, 2025); *see also Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397 (1997) (overturning judgment obtained following jury trial); *Sanchez v. Young Cnty., Texas,* 956 F.3d 785, 796 (5th Cir. 2020) (reversing grant of summary judgment for municipal defendant). Defendants' decision to heavily rely upon summary judgment matters at the motion to dismiss stage is perplexing, especially since the City was a defendant in the *Ettinoffe* matter.

The other cases relied upon by Defendants similarly also do not support their position. In *Jeffrey v. City of Houston*, No. 4:23-CV-00069, 2024 WL 1313897 (S.D. Tex. Mar. 27, 2024), the plaintiff alleged "that HPD has a policy for its officers to file only truthful affidavits and testimony, implying that the misconduct of Goines and his squad was in direct contravention to the intentions of both the City and the Chief of Police. *Jeffrey*, 2024 WL 1313897 at *3. No such self-defeating

16

allegations exist in the Complaint here.  Indeed, the Complaint alleges the opposite, namely that the HPD engaged in a widespread practice of preparing false probable cause affidavits and engaging in other illegal behaviors that resulted in false arrests and malicious prosecutions. Compl. at ¶¶ 438, 453, 457.  The plaintiff in *Jeffrey* also only alleged that one officer engaged in the filing of false affidavits and testimony and failed to allege that notice by the City or Chief of Police.  *Jeffrey*, 2024 WL 1313897 at *4.  Similarly, the plaintiffs in *Ybarra v. City of Houston*, S.D. Tex. Case No. 4:24-cv-00584 (Jan. 5, 2025), failed to allege that any officer other than Gerald Goines engaged in planting evidence or making false arrests and did not assert when or how the HPD became aware of Goines' actions.  *Ybarra*, S.D. Tex. Case No. 4:24-cv-00584, Doc. No. 26 at 13-14.  The few additional motion to dismiss cases that Defendants rely on to support the instant Motion are inapposite to the instant matter.  *See Terrell v. Harris Cnty.*, 107 F.4th 452, 459 (5th Cir. 2024) (dismissing *Monell* claim based on single incident of misconduct underlying complaint); *Ratliff v. Aransas Cnty., Texas*, 948 F.3d 281, 285 (5th Cir. 2020) (upholding dismissal of *Monell* claims where plaintiff failed to plead any specific and instead merely asserted legal conclusions); *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (upholding dismissal where plaintiff merely offered conclusory allegations and failed to allege that policies identified in complaint were causally connected to officer misconduct).  As noted above, Sim alleges that the entire HPD engaged in the practice of preparing false probable cause affidavits to secure illegal arrests and prosecutions over a period of several years and that the City was aware of these issues. Compl. at ¶¶ 438-57.  Thus, the unconstitutional actions detailed in the Complaint constituted a custom or policy sufficient to hold the City liable.

3. **Sim Has Adequately Alleged That There Was A Violation Of His Constitutional Rights Whose Moving Force Is The Policy Or Custom**

17

Defendants' assertion that the Complaint lacks "factual allegations tying a City of Houston final policy maker to any policy or custom that was the moving force behind Sim's alleged constitutional violations" is demonstrably false, as it ignores the well-pleaded allegations in the Complaint. Doc. No. 19 at 5. When the allegations in the Complaint are viewed as a whole with all reasonable inferences resolved in Sim's favor, Sim alleges that, since at least 2016, the HPD has habitually brought charges against innocent individuals where there was no probable cause due to outdated and inconsistent policies as well as inadequate training. Compl. at ¶¶ 438-40, 447-50, 455-57. Sim further alleges that the City was aware of these structural deficiencies that would lead to constitutional violations but took no steps to remedy the issue. *Id*. at ¶¶ 451-52, 454. He also asserts that these structural deficiencies caused the constitutional violations alleged in this action. *Id*. at ¶¶ 453-58. In addition to identifying the structural deficiencies in the HPD known to the City, Sim also identifies over 1,600 instances where the City initiated false arrests and criminal cases without probable cause, while offering illustrative examples of cases where the HPD engaged in illegal behavior. *Id*. at ¶¶ 439-46. At the motion to dismiss stage, this is enough.

### 4.   Defendants' Miscellaneous Remaining Arguments Are Unavailing

Defendants improperly assert that Sim is seeking to hold the City liable for "facially lawful" actions and maintain that Sim must show deliberate indifference by the City as a result. Doc. No. 19 at 6-7. As noted above, Sim has identified a facially ***unlawful*** custom or policy of the City, namely the use of false probable cause affidavits to effect illegal arrests and engage in malicious prosecutions in violation of the Fourth Amendment. Section IV. B. 1-3, *supra*. Indeed, Sim is not required to allege deliberate indifference with regard to his custom or policy theory of municipal liability. *Ettinoffe*, 2022 WL 5200084 at *3. Thus, Defendants' reliance on *Prosper v. Harris Cnty.*, No. 25-20362, 2026 WL 851986 (5th Cir. Mar. 27, 2026), is misplaced. *See Prosper*,

2026 WL 851986 at *3 (upholding dismissal where plaintiff was challenging a facially lawful activity, namely "consulting a prosecutor before effectuating a warrantless arrest.").

Regardless, Sim has adequately alleged deliberate indifference under an alternative failure-to-train theory.  The City was obviously aware of the 1,656 cases involving the HPD that were dismissed for a lack of probable cause in 2019.  Compl. at ¶¶ 439-440.  Yet, the HPD continued to prepare false probable cause affidavits to effect illegal arrests in the following years despite the obvious constitutional implications.  *Id*. at ¶¶ 441-46.  The City was also aware of structural deficiencies within the HPD between 2016 and 2024, including outdated and inconsistent protocols and insufficient training for supervisory officers, that would, and did, lead to constitutional violations, namely false arrests and malicious prosecutions.  *Id*. at ¶¶447-458.  Still, the City took no steps to remedy the conditions that caused the constitutional violations and, instead, maintained a custom of inadequate training and lack of supervision regarding the issuance of faulty probable cause affidavits and disclosing exculpatory evidence during criminal proceedings.  *Id*. at ¶¶ 454-58.  This is sufficient to allege a failure-to-train Section 1983 violation.  *Wagner v. Harris Cnty.*, No. 4:23-CV-02886, 2024 WL 2836332 at *14-*15 (S.D. Tex. June 4, 2024).  Defendants fail to address Sim's ratification allegation in their moving brief, thereby waiving any ability to address this allegation in their reply.  Compl. at ¶ 458; *Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010).

### C.  Howton is Not Entitled To Qualified Immunity

"The doctrine of qualified immunity shields government officials from liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Reyes*, 686 F.Supp.3d at 531 (internal quotation marks and citation omitted).  "A plaintiff seeking to defeat qualified immunity must show (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established'

at the time of the challenged conduct." *Id*. (internal quotation marks and citation omitted). "Because [a] reasonable officer would know that lying to a judge in order to procure an arrest warrant was unlawful, if facts are alleged indicating that false information was provided in procuring a warrant, that officer will not be entitled to qualified immunity." *Butler v. Hammett*, No. 4:09CV402, 2010 WL 3855560 at *5 (E.D. Tex. Aug. 30, 2010), *report and recommendation adopted*, No. 4:09CV402, 2010 WL 3835033 (E.D. Tex. Sept. 30, 2010) (internal quotation marks and citations omitted). Moreover, "a police officer cannot avail himself of a qualified immunity defense if he . . . deliberately conceals exculpatory evidence." *Geter v. Fortenberry*, 849 F.2d 1550, 1559 (5th Cir. 1988).

Sim has plausibly alleged that Howton violated his Fourth Amendment rights in two respects – false arrest and malicious prosecution. Section IV. A., *supra*. "The Fourth Amendment right to be free from arrest without probable cause [was] clearly established" prior to Sim's arrest on February 29, 2024. *See Guerra v. Castillo*, 82 F.4th 278, 286 (5th Cir. 2023) (decided on September 7, 2023); Compl. at ¶ 465. Moreover, the elements of a Fourth Amendment malicious prosecution claim were clearly established by the Fifth Circuit on February 15, 2023 and reiterated by this Court on August 11, 2023, well in advance of the events underlying Sim's malicious prosecution claim. *See Armstrong v. Ashley*, 60 F.4th 262, 279 (5th Cir. 2023) (detailing elements necessary to allege a Fourth Amendment malicious prosecution claim as indicated in Section IV. A. 2., *supra*); *see also Reyes*, 686 F.Supp.3d at 532 (same); Compl. at ¶ 489. Thus, Defendants' assertion that Sim "cannot identify existing precedent that placed the specific constitutional issue[s] concretely beyond debate" is undeniably wrong. Doc. No. 19 at 20. Moreover, Sim alleges that Howton prepared arrest warrant affidavits for all of the Complaining Witnesses containing false information and material omissions and that she concealed and failed to disclose

exculpatory evidence. Section IV. A. 1, *supra*; Compl. at ¶¶ 229-289, 292-363, 367, 382-83, 393, 395-96, 404-405, 408-410, 414, 419, 421, 434.  Accordingly, Howton is not entitled to qualified immunity.

WHEREFORE, Plaintiff Eric Sim, by and through counsel, respectfully requests that Defendants City of Houston and Katelyn Howton's Motion to Dismiss be denied.

**Respectfully submitted,**

Dated: June 5, 2026

**NELSON S. EBAUGH, P.C.**                              **OFFIT KURMAN, P.A.**

/s/ *Nelson S. Ebaugh*_____        */s/ Kimberly C. Lau (w/ permission NSE)*
Nelson S. Ebaugh, Esq.                                     Kimberly C. Lau, Esq. (*pro hac vice*) –
Nelson S. Ebaugh, P.C.                                     Attorney-in-Charge
Texas Bar No. 24007139                                   James E. Figliozzi, Esq. (*pro hac vice*)
SDTX Bar No. 24270                                        Offit Kurman, P.A.
3730 Kirby Drive, Suite 1200                           590 Madison Avenue, 6th Floor
Houston, TX, 77098                                        Tel:  (212) 545-1900
nebaugh@ebaughlaw.com                             Fax:  (212) 454-1656
                                                                     kimberly.lau@offitkurman.com
                                                                     james.figliozzi@offitkurman.com

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 5, 2026, a true and correct copy of the foregoing was served on all counsel of record through the Court's CM/ECF system.

I further certify that, on June 5, 2026, a true and correct copy of the foregoing was served by first-class United States mail, postage prepaid, on the following pro se defendants at their last known addresses:

Mia Morey
1738 Pecan Lane
Stafford, Texas 77477

Alejandra Espitia
2345 Bering Dr, Apt 451
Houston, TX 77057

I further certify that a courtesy copy was sent by electronic mail to Defendant Mia Morey at miafemorey@gmail.com and to Defendant Alejandra Espitia at alejandra.ipromua@gmail.com.

/s/ Nelson S. Ebaugh
Nelson S. Ebaugh

4914-9991-7483, v. 18