ERIC SIM,                               :

                                     :

       Plaintiff,                  :

v.                                   :

                                   :       Civil Action No. 4:26-cv-01563

CITY OF HOUSTON, *et al.*,       :

                                   :

       Defendants.             :

## **OPPOSITION TO DEFENDANT KIRSTEN KASSIEAS' MOTION TO DISMISS THE COMPLAINT**

Plaintiff Eric Sim, by and through counsel, states as follows for his Opposition to Defendant Kirsten Kassieas' Motion to Dismiss the Complaint:

## **INTRODUCTION**

Plaintiff Eric Sim ("Sim") was arrested, jailed, publicly disgraced, and prosecuted for months based on false accusations about consensual sexual relationships. ECF No. 1 (hereinafter, "Compl.") at ¶¶ 4–15, 376–380, 391–392, 556–563. Defendants Kirsten Kassieas f/k/a Kirsten Koryciak ("Kassieas") and Kaitlyn Howton ("Howton"), both of whom are detectives with the Houston Police Department (the "HPD"), were not passive bystanders to that result. Rather, as alleged in the Complaint, Kassieas and Howton played pivotal roles in transforming a group of coordinated, false allegations into a sustained criminal prosecution against Sim. After several complainants collaborated to accuse Sim of sexual assault, Kassieas, and Howton adopted these allegations wholesale, ignored obvious fabrications and inconsistencies in the witnesses' testimony, and advanced them without meaningful scrutiny. Rather than conducting an independent investigation, Kassieas and Howton merely aligned themselves with the

complainants' narrative and treated their accusations as presumptively true, despite glaring inconsistencies and contradictions.

## I. Factual Allegations in the Complaint

### A. Interview of Sooyoun Cho

At all relevant times, Kassieas and Howton worked as detectives at the HPD. Compl. at ¶¶18-19. On February 28, 2024, Howton conducted an interview of Sooyoun Cho ("Cho"). Compl. at ¶229. At the beginning of the interview, Cho stated that she could not speak English well. Compl.. at ¶ 230. Despite this admission from Cho, Howton continued with the interview without the aid of a translator. Compl. at ¶231. Cho informed Howton that a group chat with the other women Sim had dated was the impetus for her speaking to the police. Compl. at ¶¶323-33. She noted, however, that she had no memory of her sexual encounter with Sim. Compl. at ¶¶ 234, 236. Specifically, she could not remember how she got into Sim's bed, what she was wearing on the night in question, or whether a condom was used during the encounter. Compl. at ¶237. During the interview, Cho falsely stated that she was not ready to have sex with Sim in August of 2021, that she resisted Sim's sexual advances, and that Sim penetrated her and recorded their encounter without her consent. Compl. at ¶239. Cho further falsely stated that she asked Sim to delete the video of the encounter and that she was angry about the sexual encounter. Compl. at ¶240.

Cho could not state when the sexual encounter in question took place. Compl. at ¶241. When Howton asked her if August 2021 sounded correct, Cho responded, "Yeah. Maybe." Compl. at ¶242. Following her equivocal response, Cho asserted that she only began talking to Sim a year before the interview, or in early 2023. Compl. at ¶243. Cho then nonsensically asserted that there was a Christmas tree in Sim's home on the night the purported assault took place. Compl. at ¶244. When Howton asked Cho if Sim put anything in her vagina, Cho said, "No." Compl. at ¶245. Although Cho claimed that her vagina was hurting and bleeding during the sexual encounter, she

admitted that she did not know the cause of the pain and bleeding. Compl. at ¶246. Cho also stated that, as she and Sim were leaving his home together after the encounter, she thought "maybe I can try" to have a relationship with Sim. Compl. at ¶250. She further stated that, upon discovering that her car had been broken into following the sexual encounter, she called Sim for help. Compl. at ¶251. During the interview, Howton went over Cho's statement to NASA regarding the sexual encounter. Compl. at ¶280. In her statement to NASA, Cho stated that the sexual encounter at issue occurred in mid-August 2021. Compl. at ¶281. Thus, Howton's statement that the encounter occurred on or around August 1, 2021, was unquestionably false. Compl. at ¶282.

In her affidavit regarding Cho, Howton stated that there was "good reason to believe on or about August 1st 2021, Soo Cho's sexual organ was unlawfully caused to contact the sexual organ of Eric Sim without consent." Compl. at ¶278. Howton swore to the veracity of this statement even though she knew that Cho and Sim's sexual encounter did not occur on August 1, 2021. Compl. at ¶279. In preparing and swearing to the truth of her affidavit, Howton ignored the fact that Cho either could not remember or was equivocal regarding crucial details regarding the sexual encounter with Sim, *e.g.,* whether anything was inserted into her vagina during the sexual encounter. Compl. at ¶283. Howton also failed to interview Sim before preparing and swearing to the truth of her affidavit. Compl. at ¶284. Despite the issues noted above, Howton still swore that there was probable cause to establish that Sim sexually assaulted Cho when, in fact, none existed. Compl. at ¶284.

### B. Interview of Alejandra Espitia

Howton interviewed Alejandra Espitia ("Espitia") on February 22, 2024. Compl. at ¶253. Espitia was unable to state when she started dating Sim, noting alternatively that they began dating in March, April, May, and June of 2021. Compl. at ¶254. During the interview, Espitia stated that

she went to Sim's house one evening to Netflix and chill, a slang term for a casual sexual encounter. Compl. at ¶¶255, 257. Espitia falsely informed Howton that this was the first and only time that she and Sim had sex. Compl. at ¶258. During the evening in question, Espitia drank heavily and blacked out. Compl. at ¶259. When she awoke the next morning in Sim's bed, she did not remember anything that happened other than Sim giving her a Versace necklace as a gift. Compl. at ¶260. Espitia told Howton that she first noticed that her vagina was swollen during brunch with Sim and that she subsequently discovered semen in her vagina while in the bathroom. Compl. at ¶262. She also told Howton that a conversation with her friend during the brunch regarding the encounter made her realize that "maybe" Sim put something in her food or drink. Compl. at ¶264. Espitia informed Howton that her friend "started, like, putting the stuff in [Espitia's] mind" during the conversation, referring to the unfounded claim that she had been drugged. Compl. at ¶265. Later in the interview, Espitia told Howton that she conclusively determined that Sim had drugged her after she took ayahuasca, a powerful hallucinogenic drug. Compl. at ¶266. However, just prior to her recounting of her drug-fueled revelation, Espitia explicitly stated, "I don't remember what happened," when referring to the sexual encounter. Compl. at ¶267. Espitia falsely told Howton that she immediately blocked Sim after the brunch where she purportedly discovered semen in her vagina while urinating, which would have occurred on September 25, 2021. Compl. at ¶268.

Espitia showed Howton photos of bruises that were purportedly caused by Sim. Compl. at ¶269. Howton, however, made no effort to verify the authenticity of these photos or establish that they were taken close in time to September 24, 2021 during the interview. Compl. at ¶270. Espitia falsely claimed that Sim gave her a sexually transmitted disease, but she was unable to provide any medical record to support this assertion and could not name the doctor or clinic that diagnosed her and prescribed her medication for the condition. Compl. at ¶271. She also informed Howton

that she waited until two weeks after the sexual encounter to get tested for sexually transmitted diseases. Compl. at ¶272. At the end of the interview, Espitia once again admitted that she did not remember "dates or things like that," referring to the sexual encounter with Sim. Compl. at ¶274.

Based on her interviews with Cho and Espitia, Howton prepared and presented probable cause affidavits in order to obtain an arrest warrant for Sim. Compl. at ¶275. In her affidavit regarding Espitia, Howton stated that there was "good reason to believe on or about September 24th 2021, Alejandra Espitia's sexual organ was unlawfully caused to contact the sexual organ of Eric Sim without consent." Compl. at ¶286. Howton swore to the veracity of this statement despite Espitia's admission that she did not remember anything about the sexual encounter or being drugged. Compl. at ¶287. Howton also failed to interview Sim before preparing and swearing to the truth of her affidavit. Compl. at ¶288. Despite the issues noted above, Howton still swore that there was probable cause to establish that Sim sexually assaulted Espitia when, in fact, none existed. Compl. at ¶289.

### C.      Interview of Thea Chavez

Howton interviewed Thea Chavez ("Chavez") on February 23, 2024. Compl. at ¶292. During the interview, Chavez admitted that her sexual encounter with Sim on May 15, 2020 was consensual. Compl. at ¶¶293-94. Chavez also offered contradictory statements falsely alleging that Sim held her down on the bed, forcibly removed her clothes, and had sex with her even though she said she was not ready. Compl. at ¶295. She then informed Howton that she took a shower with Sim after their sexual encounter. Compl. at ¶296. Chavez also told Howton that she went on another date with Sim after the May 15, 2020, encounter and had sex with him again, after which Sim allegedly asked Chavez to be his girlfriend. Compl. at ¶299.

Chavez told Howton that she felt "used" by Sim due to his lack of commitment to her but that there was no basis for a criminal charge against him. Compl. at ¶300. She noted that she was frustrated regarding Sim's lack of commitment and was upset when she discovered an Instagram account detailing Sim's relationships with other women. Compl. at ¶301. She further admitted that she collaborated with the other women who dated Sim whom she had met online to harass Sim. Compl. at ¶303. Despite Chavez admitting the encounter was consensual, Howton describing the encounter as consensual herself at one point, and Chavez's statement that she did not believe criminal charges were appropriate, Howton concluded the interview by stating that she believed a crime had occurred. Compl. at ¶305. Howton subsequently prepared a probable cause affidavit asserting that there was good cause to believe that Sim sexually assaulted Chavez on May 15, 2020. Compl. at ¶306.

D.      **Interview of Mia Morey**

On March 8, 2024, Howton and Kassieas interviewed Defendant Mia Morey ("Morey"), one of several women who, acting in concert, falsely accused Sim of sexual assault. Compl. at ¶ 307. During the interview, Morey admitted that her sexual encounter with Sim was consensual and that, on the day before the encounter, she had decided that she was "ready to marry him." Compl. at ¶¶ 308, 311. Despite this, Kassieas falsely and with an intent to mislead told Morey that she had, in fact, been raped. Compl. at ¶ 309. In her affidavit regarding Morey, which was prepared based on the improper interviews conducted by Kassieas and Howton, Howton stated that there was "good reason to believe on or about April 3, 2022, Mia Morey's sexual organ was unlawfully caused to contact the sexual organ of Eric Sim without consent." Compl. at ¶317. This was perjurious, as it completely ignored that Morey previously admitted that her sexual encounter with Sim—a person with whom she was infatuated— was consensual. Compl. at ¶ 318.

6

### E. Interview of Sim

On March 1, 2024, Howton and Kassieas interviewed Sim. Compl. at ¶368. During the interview, Howton and Kassieas informed Sim that four women – Cho, Espitia, Chavez, and Xi Chen – were alleging that he sexually assaulted them. Compl. at ¶ 369. In response, Sim stated he had never met anyone named Xi Chen and that he had dated Cho, Espitia, and Chavez over a period of several months. Compl. at ¶¶ 370-71. He further noted that all three women were involved in a smear campaign against him. Compl. at ¶372. After Howton and Kassieas told Sim about the accusations made by Cho, Espitia, and Chavez, Sim informed them that the accusations were false and brought up specific facts that contradicted their stories. Compl. at ¶ 373. Howton and Kassieas, however, ignored the exculpatory information that Sim provided, as they had already formulated their own narrative that Sim was a serial sexual assaulter. Compl. at ¶ 375. Later in the day on March 1, 2024, Sim was formally charged with sexually assaulting Cho and Espitia. Compl. at ¶376. Throughout this ordeal, Howton and Kassieas had full access to Sim's electronic devices and the exonerating evidence contained therein. Compl. at ¶ 383. Despite this, neither Howton nor Kassieas informed the Harris County District Attorney's office about the existence of this exonerating evidence prior to charging Sim for sexual assault. Compl. at ¶¶ 383, 414, 419, 421.

### F. Interview of Krystina Azucena

Howton conducted a telephone interview with Krystina Azucena ("Azucena") on March 15, 2024. Compl. at ¶ 319. During the interview, Azucena provided an inconsistent and illogical summary of her sexual encounter with Sim. Compl. at ¶ 320. In describing the encounter, Azucena used the words, "we'd slept together that night." Compl. at ¶ 321. During the interview, Azucena falsely asserted that her sexual encounter occurred in August 2019. Compl. at ¶ 322. Azucena

informed Howton that she did not completely remember what happened between her and Sim and asserted that she forgot how to get home after the encounter. Compl. at ¶325. Azucena told Howton that she did not want to be involved in any criminal proceeding, but Howton told Azucena that the HPD was trying to show a pattern of Sim supposedly assaulting multiple women and that the case against Sim would be stronger if Azucena was involved. Compl. at ¶326.

In her affidavit regarding Azucena, Howton stated that there was "good reason to believe on or about August 1, 2019, Krystina Azucena's sexual organ was unlawfully caused to contact the sexual organ of Eric Sim without consent." Compl. at ¶327. Howton made this statement despite Azucena's inconsistent and illogical testimony, her inability to specifically state when the sexual encounter occurred, and her admission that she did not remember everything about the encounter. Compl. at ¶328.

### G.      Interview of Xi Chen

Howton interviewed Xi Chen on February 24, 2024. Compl. at ¶329.  Sim does not have any recollection of any sort of interaction, sexual or otherwise, with Chen. Compl. at ¶330.  At the outset of the interview, Howton told Chen that the HPD was looking for additional accusers to build a good case against Sim. Compl. at ¶332. Chen responded by telling Howton that she did not want the police to "destroy" Sim. Compl. at ¶333. Chen also stated that she had "empathy" towards Sim and did not want to press charges. Compl. at ¶334.  Chen informed Howton that she invited Sim to her home for lunch and that he wanted to have sex. Compl. at ¶335. She told Howton that Sim touched her breasts and performed oral sex on her but "it wasn't bad or hard" and that it was "not forceful." Compl. at ¶336. Chen also reiterated that the oral sex did not make her uncomfortable and that she was "okay with it."  Compl. at ¶337. She also confirmed that she was "okay with" Sim touching her breasts. Compl. at ¶338.  Howton then referred to a false report that

8

Chen had made immediately after the encounter asserting that she inexplicably ran away from Sim after the consensual encounter. Compl. at ¶339. Somehow, Chen had forgotten this until she was reminded by Howton. Compl. at ¶340. According to Chen, this second encounter that she suddenly remembered involved a one-to-two-hour period where she wrestled with Sim (who she described as much stronger than her) on her bed. Compl. at ¶341. Chen also admitted to Howton that she did not remember if Sim penetrated her during the second instance but that she "believe[d] he did." Compl. at ¶342. Chen also conceded, "I don't really remember the details" of the encounter with Sim. Compl. at ¶343. She also could not remember when Sim arrived at her home. Compl. at ¶344.

In her affidavit regarding Chen, Howton stated that there was "good reason to believe on or about September 22, 2019, Xi Chen's sexual organ was unlawfully caused to contact the sexual organ of Eric Sim without consent." Compl. at ¶ 350. Howton made this statement under penalty of perjury even though Chen provided inconsistent and contradictory information regarding the supposed encounter. Compl. at ¶351.

### H.      Interview of Nickole Ashlock

Howton interviewed Nickole Ashlock ("Ashlock") on May 10, 2024. Compl. at ¶ 352. At the beginning of the interview, Howton acknowledged that Ashlock had no interest in pursuing criminal charges against Sim and then informed Ashlock that a criminal case could be pursued whether Ashlock wanted to or not. Compl. at ¶353. Howton also expressed a desire to get Sim "locked away." Compl. at ¶354. During the interview, Ashlock informed Howton that Campbell had contacted her about speaking to the police. Compl. at ¶355. Ashlock also provided a false recounting of her first kiss with Sim and lied about when she next saw Sim after the supposedly non-consensual sexual encounter. Compl. at ¶356. She also falsely portrayed Sim as the one

seeking a relationship when, in reality, Ashlock was desperate to spend time with Sim. Ashlock repeatedly referred to her encounter with Sim as "sex" and not "assault." Compl. at ¶357. Ashlock also stated that she could not remember exactly what happened during her encounter with Sim and did not mention that she had consensual sex with Sim the week prior to the encounter she was discussing with Howton. Compl. at ¶358. Ashlock admitted that she was looking for a serious relationship and became upset with Sim when she learned that he was dating other women while he was seeing her. Compl. at ¶360. In her affidavit regarding Ashlock, Howton stated that there was "good reason to believe on or about April 20, 2023, Nickole Ashlock's sexual organ was unlawfully caused to contact the sexual organ of Eric Sim without consent." Compl. at ¶361. Howton made this statement even though Ashlock offered provably false testimony, admitted that she could not remember the details of her sexual encounter with Sim, and identified a clear motive for wanting to harm Sim. Compl. at ¶362.

### I.     Search Warrant and Arrest

On March 28, 2024, Sim was charged with sexually assaulting Chavez, Morey, Azucena, and Chen. Compl. at ¶391. Sim was also subjected to a DNA swab on March 28, 2024. (Compl. at 392). On June 21, 2024, Howton provided a magistrate judge with false information to secure a meritless search warrant of Sim's home. Compl. at ¶412. Specifically, Howton asserted that she obtained additional evidence from Sim's electronically stored information, which indicated that additional crimes had been committed. Compl. at ¶413. Thereafter, Howton, Kassieas, and other members of the HPD arrived at Sim's home to execute the search warrant and had their guns drawn when Sim answered the door. Compl. at ¶415. In executing the invalid warrant, Howton, Kassieas, and other members of the HPD seized Sim's personal items unrelated to any of the pending charges, trashed Sim's home, and took a journal related to the criminal charges that Sim had

10

prepared at the direction of his criminal counsel, which contained information that was obviously covered by the attorney-client privilege and work product doctrine. Compl. at ¶ 416.

## II.  Legal Standard

A Rule 12(b)(6) motion to dismiss is "viewed with disfavor and is rarely granted," *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citation omitted), because a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face," *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Austin v. City of Pasadena*, 74 F.4th 312, 321 (5th Cir. 2023) (citation omitted).  In considering a motion to dismiss, courts accept "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Katrina Canal*, 495 F.3d at 205 (citations omitted).

## III.  Legal Argument

### A. <u>Kassieas is Not Entitled to Absolute Immunity</u>

Kassieas misleadingly contends that she is entitled to absolute immunity because "government officials in their execution of facially valid judicial orders entered by a court of competent jurisdiction" have "'absolute immunity for enforcing the terms of a court order.'" Doc. No. 32 at 4-5.  (Quoting *Mays v. Sudderth*, 97 F.3d 107, 112 (5th Cir. 1996)).  Sim, however, is not suing Kassieas for enforcing the terms of an arrest warrant; rather, Sim is seeking damages against Kassieas for her role in securing Sim's false arrest and maliciously prosecuting Sim.  For the reasons stated *infra*, such conduct is neither entitled to absolute nor qualified immunity.

**B.** **<u>The Independent Intermediary Doctrine Does Not Bar Sim's False Arrest and Malicious Prosecution Claims</u>**

Kassieas' reliance on the independent intermediary doctrine is misplaced. Under that doctrine, an officer is shielded from liability for false arrest and malicious prosecution if "facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury," which "breaks the chain of causation" and "insulate[s] the initiating party." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010) (internal citations omitted). "Although the independent-intermediary doctrine is robust, it is not without qualification." *Poullard v. Jones*, 596 F. Supp. 3d 729, 738 (N.D. Tex. 2022). For the defense to have any weight, the intervening factfinders must make decisions based on information untainted by the misconduct of the officers claiming the defense. *Id.* If, however, it "can be shown that the deliberations of that intermediary were in some way tainted by the actions of the defendant," a defendant has no recourse to the defense. *Cuadra*, 626 F.3d at 813. *See Poullard v. Jones*, 596 F. Supp. 3d 729, 739–40 (N.D. Tex. 2022) ("Whatever its precise form, if [a] proceeding is tainted," including "by fabricated evidence," and the "result is that probable cause is lacking, then the ensuing pretrial detention violates the confined person's Fourth Amendment rights.").

The test for determining "taint" in the context of the independent intermediary doctrine is functionally equivalent to the test for determining whether a plaintiff has adequately pleaded a claim under *Franks v. Delaware*, 438 U.S. 154 (1978). *See Terwilliger v. Reyna,* 4 F.4th 270, 281 (5th Cir. 2021) (noting that the "holding of *Franks* is [functionally] an exception to the independent intermediary doctrine"); *Wilson v. Stroman*, 33 F.4th 202, 209–10 (5th Cir. 2022). A *Franks* violation "may be established where an officer intentionally, or with reckless disregard for the truth, includes a false statement in a warrant application," or omits "material" and "exculpatory" facts from the affidavit. *Kohler v. Englade*, 470 F.3d 1104, 1113 (5th Cir. 2006). "Likewise, the

intentional or reckless omission of material facts from a warrant application may amount to a Fourth Amendment violation." *Id.* Under *Franks*, liability for false arrest or malicious prosecution may attach, not only to the officer who "prepared or signed the warrant affidavit," but also to "(A) any person directing the inclusion of false information in the affidavit, or (B) any person who supplied false information for the purpose of compiling a warrant affidavit." *Hughes v. Garcia*, 100 F.4th 611, 620 (5th Cir. 2024).

While "mere allegations of 'taint' are insufficient at summary judgment" to serve the dual purpose of establishing a *Franks* claim and overcoming the independent intermediary defense," such allegations may be "adequate to survive a motion to dismiss where the complaint alleges other facts supporting the inference." *McLin v. Ard*, 866 F.3d 682, 690 (5th Cir. 2017) (internal citations omitted). Thus, in *McLin*, the Fifth Circuit held that plaintiff had adequately pleaded the "taint exception" to the independent intermediary doctrine based on allegations that: (1) defendants held "'individual and collective meetings'" for the "purpose of discussing the pursuit of criminal charges against" the plaintiff; (2) the "defendants conspired . . . to create false and misleading arrest warrant affidavits as the necessary predicate to securing" arrest warrants; and (3) plaintiff's arrest was "based in whole or in part upon the material misrepresentations, errors, omissions, and other inaccuracies" made by the defendants. *McLin*, 866 F.3d at 690.

In *Poullard*, the plaintiff made the following allegations to show the grand jury proceedings were tainted: (1) "Subsequent to [p]laintiff's arrest," the officer's "allegations against [p]laintiff were brought before a grand jury"; (2) the officer "deliberately provided false information to the grand jury. Specifically, [the officer] misrepresented the manner in which [p]laintiff was identified by [a witness]."; and (3) the officer's "misrepresentation tainted the grand jury's deliberations and decision to indict because it precluded the grand jury members from knowing that the only

13

inculpatory evidence against [p]laintiff, the identification, was coercive and inherently unreliable." *Poullard*, 596 F. Supp. 3d at 740.

In finding that these allegations were sufficient at the Rule 12(b)(6) stage, the *Poullard* court rejected the defendant's contention that the plaintiff's allegations constituted "rank speculation" and "guessing" as to "what took place before the grand jury[.]" *Id.* Noting that the plaintiff was "not require[ed] . . . to prove the impossible—what occurred inside the secret proceedings of a grand jury," the *Poullard* court found that plaintiff's allegations that the defendant "lied in his arrest-warrant affidavit about how [plaintiff] was identified by [a witness]" was sufficient to establish the exception to the independent intermediary doctrine at the Rule 12(b)(6) stage. *Id. See also Bustamante v. Christian*, 1997 WL 42530, at *5 (N.D. Tex. Jan. 29, 1997) ("Because [the plaintiff] maintains that the indictment was a product of false and misleading testimony, the court cannot say in the context of Rule 12(b)(6) that the indictment absolutely bars her claim that [the] defendants caused her false arrest."); *Sullivan v. Chastain*, 2005 WL 354032, at *3 (W.D. Tex. Jan. 4, 2005) (finding that the allegation that an officer "swore out a Complaint against [the plaintiff] without personal knowledge or probable cause" was sufficient to survive a motion to dismiss).

Similarly, here, Sim has alleged that he was arrested based on a perjurious affidavit, which charged him with raping Morey even though the latter informed Kassieas that her sexual encounter with Sim was consensual. Compl. at ¶¶ 308-9, 311. On the basis of this false information supplied by Kassieas, which ignored exculpatory evidence provided by both Morey and Sim, Howton prepared an affidavit noting that there was "good reason to believe" Morey had been raped. Compl. at ¶ 317. Sim further alleges that both Howton and Kassieas had full access to Sim's electronic devices, which contained exculpatory evidence, when they secured the criminal charges against

Sim for the purported sexual assaults of Chavez, Morey, Azucena, and Chen. Compl. at ¶¶391, 393-94. Despite this, Kassieas failed to inform the District Attorney about the existence of the exonerating evidence contained on these devices. Compl. at ¶ 396. Taken together, the allegations support a reasonable inference that Kassieas played an integral role in providing the information Howton utilized to obtain a tainted probable cause affidavit for the purpose of securing Sim's arrest.

Kassieas cites numerous summary judgment cases throughout her briefing on the independent intermediary defense, including: *Deville v. Marcantel,* 567 F.3d 156 (5th Cir. 2009); *Taylor v. Gregg*, 36 F.3d 453 (5th Cir. 1994); *Johnson v. Norcross*, 565 F. App'x 287 (5th Cir. 2014); *Melton v. Phillips*, 875 F.3d 256, 258 (5th Cir. 2017); *Shadley v. Grimes*, 405 F. App'x 813 (5th Cir. 2010); *Anderson v. City of McComb, Miss.,* 539 F. App'x 385, 387 (5th Cir. 2013); *Perry v. Mendoza*, 83 F.4th 313, 315 (5th Cir. 2023); *Brown v. Lyford*, 243 F.3d 185, 190 (5th Cir. 2001); *Davidson v. City of Stafford, Tex.*, 848 F.3d 384 (5th Cir. 2017). *See* Doc. No. 32 at 7-14. These cases are inapposite here where the issue before the Court is not whether, based on the evidence, there is a genuine dispute of material fact, but whether the allegations in the Complaint are sufficiently pleaded.

Kassieas contends that, "[e]ven if [Sim] satisfies the *Franks* exception, [Sim's] claims are barred by judicial determinations of probable cause and grand jury indictments in seven other cases." Doc. 32 at 8-9. Sim, however, has contended that he was arrested as a result of tainted investigative proceedings, which culminated in the drafting of false probable cause affidavits. Given the secrecy of grand jury proceedings, Sim does not have the additional burden of establishing that the evidence presented to the grand jury was similarly tainted but may rely on the

inference that the grand jury relied on the same tainted evidence noted in the probable cause affidavit. *Poullard*, 596 F. Supp. 3d at 740.

Citing *Melton v. Phillips*, 875 F.3d 256, 258 (5th Cir. 2017), Kassieas contends that an "officer must have prepared or signed a warrant affidavit to be liable under *Franks*." Doc. No. 32 at 11. For reasons stated *supra*, however, this is a misstatement of the law. Liability under *Franks* "is not limited to the person who prepared or signed the warrant affidavit." *Hughes*, 100 F.4th at 620. Rather, "liability can attach to any person directing the inclusion of false information in the affidavit, or any person who supplied false information for the purpose of compiling a warrant affidavit." *Lee v. City of Midland,* No. 7:22-CV-0185, 2025 WL 2101975, at *9 (W.D. Tex. July 25, 2025) (finding that factual dispute existed whether officer who, among other things, had knowledge of the investigation and participated in witness interviews is liable under *Franks* even though the officer neither prepared nor signed the affidavit); *see also Terwilliger*, 4 F.4th at 283 (holding that liability could attach to an investigator who provided evidence, knew the wording of the affidavit, and recklessly disregarded exculpatory evidence showing that probable cause was lacking).

Here, Sim has alleged that Kassieas, during her interview of Morey, fabricated the fact that Sim had raped Morey even though the latter told her, unequivocally, that her sexual relations with Sim were consensual. Compl. at ¶¶ 308-09. Sim has further alleged that, even though Kassieas was in possession of Sim's electronic devices that contained exculpatory evidence, she made no effort to communicate this evidence to the District Attorney. Compl. at ¶396. Taken together, these allegations are sufficient to establish, at the pleading stage, the taint exception to the independent intermediary doctrine. *See Poullard*, 596 F. Supp. 3d at 740; *McLin*, 866 F.3d at 690; *Bustamante*, 1997 WL at *5.

**C. Sim Has Adequately Pleaded a Malicious Prosecution Claim**

Kassieas contends that Sim has failed to state a malicious prosecution claim because, "[i]n Texas, only county and district attorneys may represent the state in criminal proceedings." Doc. No. 32 at 14-15. Thus, according to Kassieas, an investigating officer "cannot procure a criminal prosecution when the decision to prosecute is left to the discretion of another person, a law enforcement official or the grand jury." Doc. No. 32 at 14-15.

Kassieas' contention is specious. If taken seriously, then an investigating officer in Texas is categorically insulated from malicious prosecution claims because the District Attorney, in every case, has the exclusive prerogative to prosecute a defendant. That, however, is not the law. Instead, an officer may be liable for malicious prosecution when he or she "'lied to or misled the prosecutor' or 'failed to disclose exculpatory evidence to the prosecutor.'" *Soto v. Monge*, 735 F. Supp. 3d 792, 804 (W.D. Tex. 2024) (quoting *Reyes v. Greer*, 686 F. Supp. 3d 524, 534 (W.D. Tex. 2023)); *Halsey v. Pfeiffer*, 750 F.3d 273, 297 (3d Cir. 2014) ("If the officers influenced or participated in the decision to institute criminal proceedings, they can be liable for malicious prosecution"). Thus, when an "officer's investigatory materials 'contain knowing misstatements' and 'were clearly in the prosecution's possession,' the misstatements have caused the resulting prosecution if they were pertinent to the decision to prosecute." *Soto*, 735 F. Supp. 3d at 804 (quoting *Sykes v. Anderson*, 625 F.3d 294, 316 (6th Cir. 2010). Furthermore, the act of "'deliberately failing to disclose exculpatory evidence" can "form the basis for an inference that a defendant police officer acted with malice in initiating and maintaining a prosecution.'" *Id*. (quoting *Sanders v. English*, 950 F.2d 1152, 1163 (5th Cir. 1992)). *See also Stonecipher v. Valles*, 759 F.3d 1134, 1146 (10th Cir. 2014) ("Malice may be inferred if a defendant causes the prosecution without arguable probable cause.").

17

Here, Sim has alleged that Kassieas was a key player in fabricating facts with the end goal of having him arrested for sexual assault. Compl. at ¶¶11, 308-09, 395. To effectuate this goal, Kassieas attempted to persuade certain complaining witnesses, *e.g.*, Morey, that they were raped despite their testimony to the contrary, and deliberately withheld exculpatory evidence in her possession and control. Compl. at ¶¶308-09. Taken together, the allegations in the Complaint support a reasonable inference that Kassieas' misconduct during the investigation played a decisive role in persuading the District Attorney to prosecute Sim. The allegations, therefore, plausibly establish a malicious prosecution claim.

### D. <u>Sim Has Adequately Pleaded, in the Alternative, a Fourteenth Amendment Substantive Due Process Claim</u>

The Fifth Circuit has recognized a substantive due process violation where police intentionally fabricate evidence and successfully procure false charges against an individual for a felony. *Cook v. City of Tyler*, 2025 WL 2465293 at *7 (E.D. Tex. 2025). However, such a claim is available only where all other constitutional claims are unavailing. *Id*. Accordingly, Sim has pleaded his Fourteenth Amendment substantive due process claims against Kassieas in the alternative.

Kassieas cites *Zimmerman v. Cutler*, 657 F. App'x 340 (5th Cir. 2016), for the proposition that a "plaintiff must make more than conclusory allegations" to show a Fourteenth Amendment violation. Doc. No. 32 at 6. *Zimmerman*, however, is in the posture of summary judgment and thus is irrelevant to whether the allegations in the Complaint are sufficient to state a claim. *Id.* at 341. Additionally, Kassieas cites *Bosarge v. Mississippi Bureau of Narcotics*, 796 F.3d 435 (5th Cir. 2015), in support of her contention that the Fourteenth Amendment claim is inadequately pleaded. Doc. No. 32 at 6. In that case, the plaintiff made threadbare allegations such as the officers "'acted intentionally or recklessly in falsely identifying' [plaintiff] as the person whom they witnessed

18

meeting with Isom in the Best Buy parking lot." *Bosarge*, 796 F.3d at 442–43. Understandably, the *Bosarge* court found these allegations to be too conclusory to be entitled to the presumption of truth. *Id.* at 443-44. Here, in contrast, Sim has pleaded specific facts to support his contention that Kassieas manufactured evidence, including that Kassieas sought to persuade Morey that she had been raped even though Morey told her the opposite. Compl. at ¶¶11, 308-09. *Bosarge*, therefore, is inapposite.

### E. Kassieas is Not Entitled to Qualified Immunity

"The doctrine of qualified immunity shields government officials from liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Reyes*, 686 F. Supp. 3d at 531 (internal quotation marks and citation omitted). "A plaintiff seeking to defeat qualified immunity must show (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Id*. (internal quotation marks and citation omitted).

As detailed above, Sim has plausibly alleged that he was subject to a false arrest and malicious prosecution due to Kassieas' role in creating probable cause affidavits containing false facts and excluding material, exculpatory evidence from the District Attorney. Compl. at ¶¶11, 308-09, 393, 395. "The Fourth Amendment right to be free from arrest without probable cause [was] clearly established" prior to Sim's arrest on February 29, 2024. *See Guerra v. Castillo*, 82 F.4th 278, 286 (5th Cir. 2023) (decided on September 7, 2023); Compl. at ▐ 465. Moreover, the elements of a Fourth Amendment malicious prosecution claim were clearly established by the Fifth Circuit on February 15, 2023 and reiterated by this Court on August 11, 2023, well in advance of the events underlying Sim's malicious prosecution claim. *See Armstrong v. Ashley*, 60 F.4th 262, 279 (5th Cir. 2023) (detailing elements necessary to allege a Fourth Amendment malicious

prosecution claim). *See also Reyes*, 686 F. Supp. 3d at 532 (same); Compl. at ⁋ 489. Thus, Kassieas' assertion that Sim "cannot identify Supreme Court or published Fifth Circuit precedent that placed the specific constitutional issue[s] concretely beyond debate" is undeniably wrong. Doc. No. 32 at 16. Based on the allegations in the Complaint detailed above, Kassieas is not entitled to qualified immunity.

WHEREFORE, Plaintiff Eric Sim, by and through counsel, respectfully requests that Defendant Kirsten Kassieas's Motion to Dismiss the Complaint be denied.

**Respectfully submitted,**

Dated: June 5, 2026

**NELSON S. EBAUGH, P.C.**                                  **OFFIT KURMAN, P.A.**

/s/ *Nelson S. Ebaugh*                                         /s/ *Kimberly C. Lau (w/ permission NSE)*
Nelson S. Ebaugh, Esq.                                         Kimberly C. Lau, Esq. (*pro hac vice*) –
Nelson S. Ebaugh, P.C.                                         Attorney-in-Charge
Texas Bar No. 24007139                                       James E. Figliozzi, Esq. (*pro hac vice*)
SDTX Bar No. 24270                                            Offit Kurman, P.A.
3730 Kirby Drive, Suite 1200                              590 Madison Avenue, 6th Floor
Houston, TX, 77098                                            Tel: (212) 545-1900
nebaugh@ebaughlaw.com                                 Fax: (212) 454-1656
                                                                        kimberly.lau@offitkurman.com
                                                                        james.figliozzi@offitkurman.com

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 5, 2026, a true and correct copy of the foregoing was served on all counsel of record through the Court's CM/ECF system.

I further certify that, on June 5, 2026, a true and correct copy of the foregoing was served by first-class United States mail, postage prepaid, on the following pro se defendants at their last known addresses:

Mia Morey
1738 Pecan Lane
Stafford, Texas 77477

Alejandra Espitia
2345 Bering Dr, Apt 451
Houston, TX 77057

I further certify that a courtesy copy was sent by electronic mail to Defendant Mia Morey at miafemorey@gmail.com and to Defendant Alejandra Espitia at alejandra.ipromua@gmail.com.

/s/ Nelson S. Ebaugh
Nelson S. Ebaugh

4899-4948-8562, v. 3