IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ERIC SIM, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | Civil Action No. 4:26-cv-01563 |
| CITY OF HOUSTON, *et al*. | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFF ERIC SIM'S RESPONSE IN OPPOSITION TO DEFENDANT ALEJANDRA ESPITIA'S RULE 12(b)(6) MOTION TO DISMISS AND TO STRIKE**

Plaintiff Eric Sim files this Response in Opposition to Defendant Alejandra Espitia's Rule 12(b)(6) Motion to Dismiss and to Strike (ECF No. 74) and shows as follows:

## I. INTRODUCTION

Sim alleges that Espitia helped set in motion a malicious prosecution by knowingly making false accusations about a consensual relationship after their consensual relationship ended contrary to her wishes. The Complaint does not rest on labels or conclusions. It alleges a months-long consensual dating and sexual relationship; numerous consensual encounters; Espitia's affectionate and sexually explicit communications; her continued friendly contact with Sim after the evening she later characterized as an assault; her agreement with Morey to make false police reports; and several affirmative false statements during her interview with Detective Katelyn Howton. Compl. ¶¶ 97–137, 224–228, 253–274, 548–560.

Espitia's motion largely ignores those allegations. She asks the Court to apply Rule 9(b) to a claim that does not sound in fraud, treat later prosecutorial and grand-jury actions as categorically breaking the causal chain, and draw inferences in her favor rather than Sim's. She also tries to convert her claimed inability to remember the events of September 24, 2021, into a reason to

disregard the Complaint's allegations that she knowingly lied about separate facts well within her knowledge—including the length and sexual nature of the parties' relationship, whether she immediately blocked Sim, and whether Sim gave her a sexually transmitted disease. At this stage, however, the Complaint's well-pleaded allegations must be accepted as true. Those allegations plausibly show that Espitia knowingly supplied false and material information that helped procure Sim's prosecution, that she lacked probable cause, that she acted with malice, and that she participated in a conspiracy to bring about the prosecution.

Espitia's passing assertion that the claims are time-barred also fails. She provides no supporting analysis, and the dates appearing on the face of the pleadings do not establish a limitations defense. Sim filed suit within the limitations period. Although Espitia was served after limitations expired, Texas law permits service to relate back to the filing date when the plaintiff exercised due diligence, an issue that normally presents a fact question and cannot be resolved against Sim from the pleadings alone.

Finally, Espitia's motion to strike fares no better. The allegations she seeks to remove explain the consensual nature of the parties' relationship, why Espitia knew several of her statements were false, her motive, and how her conduct fit within the coordinated effort to obtain criminal charges against Sim. Because those allegations directly relate to Sim's claims, and because motions to strike are disfavored, the challenged allegations should remain. Espitia's Motion to Dismiss and to Strike should be denied.

## II. BACKGROUND

This Background assumes the truth of the Complaint's allegations, as required at the Rule 12(b)(6) stage. Sim and Espitia began dating on April 8, 2021. Compl. ¶ 97. Over the following months, they went on numerous dates and repeatedly engaged in consensual sexual activity. *Id.* ¶¶

98–101, 104, 111–112, 114, 116. Espitia described one encounter as "amazing," thanked Sim for another, sent him intimate photographs and videos, and repeatedly expressed her sexual interest in him. *Id.* ¶¶ 102–110, 113, 117–118, 124, 126, 130–131. She also introduced Sim to her daughter, attended his hockey game, picked him up from the airport, invited him into her home, and entrusted him to care for her home and pets while she traveled. *Id.* ¶¶ 100, 106, 111–112, 119, 122–129.

On September 24, 2021, Espitia went to Sim's home, became intoxicated to the point of vomiting, and, according to the Complaint, did not have sexual intercourse with Sim that evening. *Id.* ¶ 132. The Complaint alleges that Espitia nevertheless remained friendly with Sim afterward. *Id.* ¶ 133. On October 1, she asked whether Sim still had a sex toy she had brought to his home on September 24, and on October 2 she drove him to the airport. *Id.* ¶¶ 134–135. Their relationship eventually ended because Espitia wanted a serious relationship while Sim wanted something casual. *Id.* ¶¶ 136–137.

The Complaint alleges that Espitia later participated in a coordinated effort to secure false criminal charges against Sim. Morey contacted Espitia through social media; they discussed their experiences dating Sim; and they developed a plan to make false reports asserting that Sim had sexually assaulted them. *Id.* ¶¶ 224–226. Espitia and the other participants then made false reports to police. *Id.* ¶¶ 227–228.

Howton interviewed Espitia on February 22, 2024. *Id.* ¶ 253. Although Espitia could not consistently identify when she began dating Sim, she told Howton that she had gone to Sim's home on September 24, 2021 to "Netflix and chill," which she understood to mean that sex was expected. *Id.* ¶¶ 254–257. She nevertheless falsely stated that this was the first and only time she and Sim had sex—an assertion contradicted by the detailed allegations concerning their prior consensual encounters. *Id.* ¶¶ 101–131, 258.

Espitia said she drank heavily and did not remember what occurred after going to bed, but then asserted that she discovered the next morning that she had been assaulted and perhaps drugged. *Id.* ¶¶ 259–267. She said the drugging theory originated when a friend began "putting the stuff in [her] mind," and she later claimed that an ayahuasca experience caused her to conclude that Sim had drugged her. *Id.* ¶¶ 264–267. Espitia also falsely stated that she immediately blocked Sim after the September 25 brunch, even though the Complaint alleges that she remained in friendly contact, asked about the sex toy on October 1, and drove Sim to the airport on October 2. *Id.* ¶¶ 133–135, 268. She further claimed that Sim gave her a sexually transmitted disease, but could provide no medical records and could not identify the doctor or clinic that allegedly diagnosed or treated her. *Id.* ¶¶ 271–272. Near the end of the interview, she falsely minimized her interest in sex at the beginning of the relationship, despite her prior messages and conduct, and again admitted that she did not remember dates or details concerning the September encounter. *Id.* ¶¶ 102–131, 273–274.

The Complaint alleges that Howton used her interviews of Cho and Espitia to prepare and present probable-cause affidavits and obtain an arrest warrant. *Id.* ¶¶ 275–277. In the affidavit concerning Espitia, Howton stated that there was good reason to believe that Espitia's sexual organ was caused to contact Sim's sexual organ without consent on September 24, 2021. *Id.* ¶ 286. The Complaint alleges that Howton made that assertion despite Espitia's admitted lack of memory and the implausible basis for her drugging claim. *Id.* ¶¶ 287–289. An arrest warrant was issued, and Sim was taken into custody on February 29, 2024. Id. ¶¶ 290–291. The prosecution later terminated in Sim's favor when all charges were dismissed on February 25, 2025. *Id.* ¶ 556.

## III. LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss is "viewed with disfavor and is rarely granted," *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citation omitted), because a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face," *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Austin v. City of Pasadena*, 74 F.4th 312, 321 (5th Cir. 2023) (citation omitted). In considering a motion to dismiss, courts accept "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Katrina Canal*, 495 F.3d at 205 (citations omitted). A limitations defense may support dismissal only when the defense is apparent from the face of the pleadings and the pleadings disclose no basis for avoiding it. *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).

## IV. ARGUMENT

### A. Espitia's Motion Should Be Denied as Untimely.

Espitia was personally served on March 30, 2026. ECF No. 37. After two extension requests, the Court ordered her to answer or otherwise respond by June 17, 2026. ECF No. 49. On June 17, Espitia filed a third request seeking an additional 45 days, but the Court has not granted that request. ECF No. 63. Although Rule 6(b)(1)(A) permits the Court to extend an unexpired deadline for good cause, filing an extension request does not itself alter or suspend the existing deadline. *See Rashid v. Delta State University*, 306 F.R.D. 530, 535 (N.D. Miss. 2015) (recognizing that a last-day extension request does not automatically stay the deadline and denying the request for failure to establish good cause). Espitia's references to her pro se status, limited financial resources, and continuing search for counsel did not identify what efforts she had made, what

circumstances had changed since her earlier extension requests, why those circumstances prevented a timely response, or why another 45 days was necessary. *See id.* at 535–36 (emphasizing that repeated extension requests must comply with Rule 6(b) and be supported by sufficiently developed facts). Espitia nevertheless waited until July 28—41 days after the operative deadline—to file her motion to dismiss, without first obtaining an order extending that deadline. ECF No. 74. The motion is therefore untimely unless the Court grants ECF No. 63. Sim respectfully requests that the Court deny that request for failure to establish adequate good cause and, consistent with *Rashid*, strike or decline to consider the untimely motion. Alternatively, the Court should deny the motion on the merits for the reasons set forth below.

**B. Espitia's Undeveloped Limitations Assertion Does Not Support Dismissal.**

Espitia states in the summary of her motion that Sim's claims are "time-barred," and she notes that she was served on March 30, 2026. Espitia's Motion ¶¶ 1, 11. But she does not identify the governing limitations period, discuss accrual, address Texas's service-and-diligence rule, or otherwise explain why those dates establish a limitations defense. A bare assertion in a summary does not establish a basis for dismissal. In any event, the dates appearing on the pleadings do not show that Sim's claims are time-barred as a matter of law.

Texas provides a one-year limitations period for malicious prosecution, and a civil-conspiracy claim carries the limitations period of its underlying tort. Tex. Civ. Prac. & Rem. Code § 16.002(a); *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 142–45 (Tex. 2019). The Complaint alleges that the criminal prosecution terminated on February 25, 2025, and the docket reflects that Sim filed this action on February 25, 2026. Compl. ¶ 556; ECF No. 1. Thus, the action was filed within the one-year period.

Espitia's March 30 service date does not change that conclusion at the pleading stage. For Texas-law claims filed in federal court, Texas's diligence rule applies. *Gonzales v. Wyatt*, 157 F.3d 1016, 1021 n.1 (5th Cir. 1998). When a plaintiff files within limitations but serves afterward, service relates back to the filing date if the plaintiff exercised due diligence. *Tex. State Univ. v. Tanner*, 689 S.W.3d 292, 296–99 (Tex. 2024); *Saenz v. Keller Indus. of Tex., Inc.*, 951 F.2d 665, 667 (5th Cir. 1992). Diligence is determined by whether the plaintiff acted as an ordinarily prudent person would under the circumstances, and it normally presents a fact question. *Tanner*, 689 S.W.3d at 298–302; *Saenz*, 951 F.2d at 667.

Nothing on the face of the Complaint establishes a lack of diligence. Espitia was served only thirty-three days after filing, and her motion identifies no lapse in Sim's service efforts—much less an unexplained or patently unreasonable lapse that could establish nondiligence as a matter of law. Because Espitia's affirmative defense is not apparent from the face of the pleadings, it cannot support dismissal under Rule 12(b)(6). *Jones*, 339 F.3d at 366.

### C. The Complaint Plausibly Alleges That Espitia's Knowing Falsehoods Helped Procure the Prosecution.

#### 1. Rule 9(b) does not govern Sim's malicious-prosecution or conspiracy claims.

Espitia first contends that Sim must plead procurement and conspiracy with the heightened particularity demanded by Rule 9(b). Espitia's Motion ¶¶ 16–17, 19, 43. That is incorrect. Rule 9(b) applies when a claim sounds in fraud. *Pace v. Cirrus Design Corp.*, 93 F.4th 879, 889 (5th Cir. 2024) ("Rule 9(b)'s heightened pleading requirements apply when a plaintiff's misrepresentation claim sounds in fraud." (cleaned up)). Sim's claims against Espitia do not. He does not allege that Espitia made statements to deceive him, that he relied on those statements, or that his claims depend on a fraud-type theory of inducement or reliance. He alleges that Espitia

knowingly made false accusations to police to procure criminal charges and agreed with others to bring about Sim's prosecution.

In a similar case involving malicious prosecution and Section 1983 claims, the court declined to apply Rule 9(b) because the alleged false statements were made to third parties, not to the plaintiffs, and the claims therefore did not sound in fraud. *Del Col v. Rice*, No. 11-CV-5138 (MKB), 2013 WL 4052867, at *8 (E.D.N.Y. Aug. 12, 2013). Espitia identifies no authority holding that the procurement element of a Texas malicious-prosecution claim, or a conspiracy based on that tort, must satisfy Rule 9(b). The ordinary Rule 8 plausibility standard governs. *See Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 168–69 (1993) (rejecting a heightened pleading standard more demanding than Rule 8(a) for § 1983 municipal-liability claims and noting that Rule 9(b) applies only to the actions it specifically enumerates).

**2. The Complaint identifies Espitia's allegedly false statements, her knowledge, and their causal role.**

Even if Rule 9(b) applied, the Complaint supplies the who, what, when, where, and how. It identifies Espitia as the speaker; her February 22, 2024, interview with Howton as the time and setting; the allegedly false statements she made; the facts showing she knew those statements were false; and the use of her accusations in the affidavit that led to Sim's arrest. Compl. ¶¶ 97–137, 224–228, 253–291, 548–551. Those allegations easily satisfy Rule 8 and give Espitia ample notice of the claim.

Espitia's suggestion that her claimed memory problems defeat knowledge misreads the Complaint. The alleged falsehoods are not confined to what happened after Espitia became intoxicated on September 24. The Complaint alleges that she falsely said September 24 was the first and only time she and Sim had sex, even though they had engaged in numerous consensual encounters during the preceding five months. *Id.* ¶¶ 101–131, 258. It alleges that she falsely said

she immediately blocked Sim, even though she remained in contact, asked him about a sex toy, and drove him to the airport after September 24. *Id.* ¶¶ 133–135, 268. It alleges that she falsely claimed Sim gave her a sexually transmitted disease, without identifying supporting medical records, a treating provider, or even a clinic. *Id.* ¶¶ 271–272. And it alleges that she falsely minimized her earlier sexual interest despite her messages, photographs, videos, and repeated consensual conduct. *Id.* ¶¶ 102–131, 273. Those are allegations of affirmative falsehoods about matters within Espitia's personal knowledge, not constructive knowledge based on a failure to remember a single evening.

The Complaint also expressly alleges actual knowledge: Espitia knew the parties' sexual relationship was consensual and nevertheless falsely told the City, Howton, and Koryciak that Sim sexually assaulted her. *Id.* ¶¶ 548–551. Thus, even under Espitia's cited decision in *Keenan v. Robin*, which distinguishes actual knowledge from constructive knowledge, the Complaint alleges the required actual knowledge. 709 S.W.3d 595, 604 (Tex. 2024), *reh'g denied* (Apr. 4, 2025). Espitia may dispute those allegations, but she cannot obtain dismissal by asking the Court to disbelieve them.

Espitia's "formal charge" argument conflates initiation with procurement. Sim does not allege that Espitia initiated the prosecution by herself filing a formal criminal charge; he alleges that she procured the charge arising from her accusation. Compl. ¶¶ 542–551. *Browning-Ferris Industries, Inc. v. Lieck*, 881 S.W.2d 288, 292–94 (Tex. 1994), recognizes initiation and procurement as distinct alternatives. Under *Lieck*, as clarified by *King v. Graham*, a complainant may procure a prosecution by knowingly furnishing false information on which law enforcement acts, provided that the information was material to—and a but-for cause of—the decision to

prosecute. 126 S.W.3d 75, 76–78 (Tex. 2003). The absence of an allegation that Espitia personally filed a formal charge therefore does not defeat Sim's procurement theory.

The Complaint alleges substantially more than general causation. It alleges that Espitia and Morey agreed to make false sexual-assault reports and that Espitia then made such a report. Compl. ¶¶ 224–227. It identifies particular statements Espitia allegedly knew were false, including statements about the parties' prior sexual relationship, her continued contact with Sim, and the alleged sexually transmitted disease. *Id.* ¶¶ 258, 268, 271. It further alleges that Espitia falsely accused Sim of nonconsensual sexual contact despite knowing that their sexual encounters were consensual. *Id.* ¶¶ 548–551. Most importantly, it alleges that Howton relied on her interviews with Espitia and Cho to prepare the probable-cause affidavits; that Howton obtained the warrant by asserting probable cause to believe Sim had assaulted Espitia; and that the affidavit concerning Espitia repeated the essential premise of Espitia's accusation—that the sexual contact occurred without consent. *Id.* ¶¶ 275, 277, 286, 289–291. Those allegations permit the reasonable inference that Espitia's knowingly false accusation supplied the material basis for the charge concerning her and that the charge would not have been pursued without it. Whether Espitia's information actually influenced the charging decision, or whether the authorities possessed an independent basis for that charge, presents a factual issue that cannot be resolved against Sim on a motion to dismiss.

**3. The later involvement of law enforcement, prosecutors, and the grand jury does not negate procurement on the pleadings.**

Espitia argues that the grand-jury indictments categorically broke the causal chain. Espitia's Motion ¶¶ 30–32. Texas law says otherwise. Although a complainant is ordinarily not responsible when the decision to prosecute rests in another's discretion, a complainant may procure the prosecution by knowingly furnishing false, material information on which the decision to prosecute was based. *See King v. Graham*, 126 S.W.3d 75, 76–78 (Tex. 2003) (holding that a

person may procure a prosecution by knowingly supplying false information, notwithstanding the later exercise of prosecutorial or grand-jury discretion); *see also Kjellvander v. Citicorp*, 156 F.R.D. 138, 144 (S.D. Tex. 1994) ("a private citizen may be held liable for malicious prosecution when he relays information known to him to be false and the official's decision to commence the prosecution was based upon this false information" (citing *Browning-Ferris Indus., Inc. v. Lieck*, 881 S.W.2d 288, 293–94 (Tex. 1994)). The Complaint alleges exactly that: Espitia knowingly supplied false information, Howton relied on her interview in preparing the warrant affidavit, and the false accusation was material to the charge involving Espitia. Compl. ¶¶ 253–291, 548–551.

Espitia's reliance on the federal independent-intermediary doctrine does not help her. *Trevino v. Iden* recognizes that an intermediary does not break causation when the process is tainted by knowing falsehoods or material omissions, and it explains that allegations of taint may suffice at the motion-to-dismiss stage when supported by other pleaded facts. 79 F.4th 524, 531–33 (5th Cir. 2023). Here, Sim alleges far more than the word "taint": he identifies Espitia's alleged false statements, the contrary facts known to her, Howton's use of the interview in the warrant affidavit, and the resulting arrest. Compl. ¶¶ 97–137, 224–228, 253–291. The Complaint also alleges that police later possessed exculpatory digital evidence but did not disclose it before charges were pursued. *Id.* ¶¶ 365–367, 381–410. Those allegations permit the reasonable inference that the later charging decisions were infected by the same false accusations and omissions.

Nor may judicial notice resolve the disputed causal issue. The Court may notice the existence of the indictments, but their existence does not establish that the grand jury received untainted information, that Espitia's statements were immaterial, or that the prosecution would have occurred without them. Those are disputed factual inferences. Espitia's assertion that her interview was too weak to influence Howton also asks the Court to reject the Complaint's contrary

allegation that Howton used the interview to prepare the affidavit and obtain the warrant. Compl. ¶¶ 275–291. At the Rule 12(b)(6) stage, the Court must draw that inference in Sim's favor, not Espitia's. *Marks v. Hudson*, 933 F.3d 481, 485 (5th Cir. 2019) (on a motion to dismiss, accepting the complaint's well-pleaded facts as true and drawing all reasonable inferences in the plaintiff's favor (citation omitted)).

**D. The Complaint Plausibly Alleges Lack of Probable Cause and Malice.**

Espitia argues that Sim must allege both lack of probable cause and an "improper purpose," relying on *McDonough v. Smith*, 588 U.S. 109, 116 (2019). Espitia's Motion ¶¶ 33–34. That argument mistakes *McDonough*'s common-law analogy for the governing elements of Sim's claim. *McDonough* addressed when a federal fabricated-evidence claim accrues; it did not define the elements of malicious prosecution and expressly stated that the Court was making no statement about what the elements of a constitutional malicious-prosecution claim are or how they may differ from those of a fabricated-evidence claim. *Id.* at 116 & n.3. Sim's claim against Espitia arises under Texas law, which requires proof that the defendant lacked probable cause and "acted with malice" in bringing about the prosecution. *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 792 & n.3 (Tex. 2006); *Richey v. Brookshire Grocery Co*., 952 S.W.2d 515, 517 (Tex. 1997). Texas law does not impose "improper purpose" as an additional, freestanding element beyond the seven elements identified in *Suberu* and *Richey*. At most, an improper purpose may constitute evidence of the required malice. The relevant questions are therefore whether the Complaint plausibly alleges that Espitia lacked probable cause and acted with malice. It does.

The probable-cause element asks whether a reasonable person would believe that a crime had been committed based on the facts as the complainant honestly and reasonably believed them to be before the criminal proceedings were instituted. *Suberu*, 216 S.W.3d at 792–93. Although

*Suberu* explains that a malicious-prosecution plaintiff must ultimately "produce evidence" rebutting the presumption of probable cause, that language describes an evidentiary burden, not a pleading requirement. 216 S.W.3d 788, 793 (Tex. 2006). Indeed, *Suberu* reviewed the legal sufficiency of the evidence supporting a jury verdict; it did not address the sufficiency of a complaint. *Id.* at 791, 793–95. At the Rule 12(b)(6) stage, Sim need only plead facts permitting a reasonable inference that Espitia lacked probable cause; the Court may not substitute an evidentiary standard for the governing pleading standard or subject the allegations to a rigorous evidentiary analysis. *See Scott v. U.S. Bank National Ass'n*, 16 F.4th 1204, 1210–11 (5th Cir. 2021) (explaining that a court errs at the motion-to-dismiss stage by substituting an evidentiary standard for a pleading requirement or by subjecting the plaintiff's allegations to a rigorous factual or evidentiary analysis). In other words, at this stage, Sim need only allege facts that, if true, show that Espitia did not honestly and reasonably believe that a crime had occurred. *Cf. Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (explaining that plausibility does not impose a probability requirement at the pleading stage and that a well-pleaded complaint may proceed even when actual proof appears improbable).

The Complaint does so. It alleges a lengthy consensual relationship, Espitia's repeated expressions of sexual interest and consensual participation, her continued friendly contact with Sim after September 24, 2021, her subsequent agreement with Morey to make false reports, and her affirmative false statements to Howton. Compl. ¶¶ 97–137, 224–227, 253–274. It expressly alleges that Espitia knew her relationship and sexual encounters with Sim were consensual, falsely accused him of sexual assault anyway, and therefore lacked probable cause to instigate the prosecution. *Id.* ¶¶ 548–558. If those allegations are true, Espitia could not have honestly and reasonably believed the accusation she made.

Espitia's reliance on *Richey* does not change that conclusion. In *Richey*, the material facts were undisputed: a store employee personally observed Richey conceal merchandise and pass through the checkout line without paying for it, and Richey acknowledged that his conduct could reasonably appear to be shoplifting. 952 S.W.2d at 517–19. Based on those undisputed objective facts, the court held that Brookshire had probable cause as a matter of law and that its failure to investigate Richey's state of mind or disclose additional facts did not negate probable cause. *Id.* at 518–19. *Richey s*eparately explained that knowingly providing false information bears on whether the complainant procured the prosecution and may constitute evidence of malice. *Id.* at 519.

The Complaint alleges materially different facts here. Sim does not rely merely on Espitia's failure to investigate, failure to disclose collateral information, or mistaken interpretation of otherwise undisputed conduct. He alleges that Espitia knew their relationship was consensual; knowingly misstated facts within her personal knowledge, including the length and sexual nature of the relationship and her continued contact with Sim; falsely accused Sim of assault; and supplied information that Howton used in preparing the probable-cause affidavit. Compl. ¶¶ 97–137, 253–291, 548–551. Whether Espitia honestly believed her accusation and whether she knowingly supplied false information present factual disputes that cannot be resolved against Sim on a motion to dismiss.

The Complaint also plausibly alleges malice independent of the absence of probable cause. Malice includes ill will, evil motive, gross indifference, or reckless disregard for another's rights and may be established through direct or circumstantial evidence. *Thrift v. Hubbard*, 974 S.W.2d 70, 80 (Tex. App.—San Antonio 1998, pet. denied). The Complaint alleges that Espitia wanted a serious relationship, while Sim wanted only a casual one, and that their relationship ended because of those conflicting expectations. Compl. ¶¶ 136–137. It further alleges that, after Morey contacted

Espitia, the two discussed their relationships with Sim, developed a plan to make false sexual-assault reports, and then carried out that plan. *Id.* ¶¶ 224–227. Espitia allegedly accused Sim of assault despite knowing that their relationship and sexual encounters were consensual. *Id.* ¶¶ 548–551. The malicious-prosecution count expressly alleges that Espitia's malice arose from her inability to accept the status and end of her relationship with Sim. *Id.* ¶¶ 559–560. These allegations plausibly support an inference of ill will, a retaliatory motive, and reckless disregard for Sim's rights. And even if Espitia's "improper purpose" formulation applied, the same allegations support a reasonable inference that her purpose was to retaliate against and punish Sim after their relationship ended—not to bring an offender to justice.

**E. The Complaint Plausibly Alleges Civil Conspiracy.**

The elements of civil conspiracy are: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983) (citing 15A C.J.S. Conspiracy § 1(2) (1967)). Conspiracy liability extends beyond the active wrongdoer to persons who planned, assisted, or encouraged the wrongful conduct, and the overt act may be committed by any member of the conspiracy. *Carroll v. Timmers Chevrolet, Inc.*, 592 S.W.2d 922, 925–26 (Tex. 1979).

The Complaint alleges each element. It identifies the participants; alleges that Morey contacted Espitia and that the two discussed their experiences with Sim; alleges that they agreed to make false police reports; alleges that Espitia and the others carried out the plan by falsely accusing Sim; and alleges that those acts caused Sim's arrest, prosecution, and damages. Compl. ¶¶ 214–228, 564–570. It also plausibly alleges the underlying tort of malicious prosecution against

Espitia, Cho, and Morey. *Id.* ¶¶ 539–563. These allegations identify the participants, shared objective, agreement, overt acts, and resulting injury. Rule 8 requires no more.

**F. Espitia Has Not Met the Stringent Standard for Striking Relevant Allegations.**

Motions to strike under Rule 12(f) face a stringent standard. The movant must show both that the challenged matter has no possible relation to the controversy and that its presence will cause prejudicial harm. *Randall v. Bay Ins. Risk Retention Grp., Inc.*, No. CV 20-430-JWD-SDJ, 2021 WL 674017, at *2 (M.D. La. Feb. 22, 2021). The Fifth Circuit treats motions to strike as disfavored remedies that should be granted sparingly. *See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982) ("motions to strike a defense are generally disfavored"). Any doubt should be resolved in favor of the nonmoving party. *Guidry v. Louisiana Lightning, LLC*, No. CV 15-6714, 2016 WL 3127256, at *6 (E.D. La. June 3, 2016) (citing 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1382 (3d ed. 2004)).

Espitia seeks to strike paragraphs 32 through 213—or at least paragraphs 97 through 137 concerning her relationship with Sim—because she regards the allegations as embarrassing and scandalous. Espitia's Motion ¶¶ 45–50. But those allegations are central to the claims. Paragraphs 97 through 137 describe the duration and nature of Sim and Espitia's relationship, their repeated consensual encounters, Espitia's communications and conduct, her continued contact after September 24, and the reason the relationship ended. Those facts bear directly on consent, Espitia's knowledge that statements in her police interview were false, probable cause, malice, and motive. The allegations involving the other women supply context for the alleged coordinated plan and are relevant to the conspiracy claim. Compl. ¶¶ 214–228, 564–570.

The fact that allegations may be personal or embarrassing does not make them scandalous under Rule 12(f) when they are directly relevant to the claims. *See United States v. Coney*, 689 F.3d 365, 379–80 (5th Cir. 2012). Nor does Espitia's current status as an engaged mother establish legal prejudice or make the historical allegations immaterial. Because Espitia has not shown that the challenged material has no possible relation to the controversy, her motion to strike should be denied.

## V. CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court deny Defendant Alejandra Espitia's Rule 12(b)(6) Motion to Dismiss and to Strike. Alternatively, if the Court identifies any pleading deficiency, Plaintiff requests leave to amend before dismissal with prejudice.

Dated: August 18, 2026

Respectfully submitted,

**NELSON S. EBAUGH, P.C.**

/s/ Nelson S. Ebaugh
Nelson S. Ebaugh, Esq.
Texas Bar No. 24007139
SDTX Bar No. 24270
3730 Kirby Drive, Suite 1200
Houston, TX 77098
Tel: (713) 752-0700
Fax: (713) 739-0500
nebaugh@ebaughlaw.com

**OFFIT KURMAN, P.A.**

/s/ Kimberly C. Lau (by permission)
Kimberly C. Lau, Esq. (*pro hac vice*)
Attorney-in-Charge
James E. Figliozzi, Esq. (*pro hac vice*)
90 Madison Avenue, 6th Floor
New York, NY 10022
Tel: (212) 545-1900
Fax: (212) 454-1656
kimberly.lau@offitkurman.com
james.figliozzi@offitkurman.com

**CERTIFICATE OF SERVICE**

I hereby certify that, on August 18, 2026, a true and correct copy of the foregoing was served on all counsel of record through the Court's CM/ECF system.

I further certify that, on August 18, 2026, a true and correct copy of the foregoing was served by first-class United States mail, postage prepaid, on the following pro se defendants at their last known addresses:

Mia Morey
1738 Pecan Lane
Stafford, Texas 77477

Alejandra Espitia
2345 Bering Dr., Apt 451
Houston, TX 77057

I further certify that a courtesy copy was sent by electronic mail to Defendant Mia Morey at miafemorey@gmail.com and to Defendant Alejandra Espitia at alejandra.ipromua@gmail.com.

/s/ Nelson S. Ebaugh
Nelson S. Ebaugh